# NATHANIEL S. PIERCE

## *v.*

# JULIA ANN MILLAY, ·by her next friend, etc.

1. DAMAGES — *vindictive in trespass cannot be given* — *malice being absent.* In an action of trespass, for personal injuries, when the act complained of is without malice, vindictive damages cannot be given.

2. SAME — *compensatory damages, only.* In such case, full compensation for the pain and suffering, loss of time, expenses incurred for medical treatment, and compensation for the injury, if permanent, is all that should be given.

3. NEW TRIAL — *excessive damages.* In an action of trespass, when the right of recovery is limited to compensatory damages merely, and a verdict for vindictive damages is given, a new trial will be granted.

APPEAL from the Circuit Court of La Salle county.

The opinion states the case.

Messrs. DICKEY & RICE, for the appellant.

Messrs. BOWEN & SHEPHERD and O. C. GRAY, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of trespass, assault and battery, brought in the La Salle Circuit Court, by Julia Ann Millay, against Nathaniel S. Pierce, and a verdict recovered of $4,000 damages.

To reverse this judgment, the defendant has appealed to this court, and has assigned various errors, among which is, that the damages are excessive.

It appears from the record, that the plaintiff below, at the time of the alleged trespass, was quite a child, not more than six years of age, and under the care of her mother, who lived in De Kalb county, separate from her husband, whose residence, if he had any, was at Leland, in La Salle county. It seems the plaintiff, with an elder sister, were sent by· the rail-

road, on the passenger train, from De Kalb county to Leland, by George Bennett, their brother-in-law, who was living with their mother at Somanauk, in De Kalb county. They reached Leland about noon, and went to the house their father had occupied, and found no one there. They were seen by defendant, Pierce, who told them to go over to the other house, which is understood to be the house occupied by Susan Pierce, a daughter of the defendant, he (Pierce) having taken possession of the Millay house, under a sale of it to him by Millay. It was proved by Isaac Target, an uncle of plaintiff, that he was at the train when the girls arrived, and he asked them where they were going, and they said their mother had sent them over to Leland, and told them to go to Mrs. Pierce's, and while he was talking to the girls he saw Mrs. Pierce on the opposite side of the street, and pointed her out to the girls, and went with them at once across the street to where Mrs. Pierce was, and one of the girls spoke to her, but he did not hear what she said, but he heard Mrs. Pierce, in reply to them, say, "Very well, I am going down to the farm in the evening, with the buggy, and I will take you down with me when I go."

Van Scoy also testified, that, about the middle of the afternoon of the day the little girls arrived at Leland, they were at his house playing with his little girl, and when asked by him what they were doing there, they said they had come from Somanauk, and were going home with Mrs. Pierce.

It further appears, when the buggy was ready in the evening, the defendant put the children in it, with Mrs. Pierce, who drove it, and was a good driver, and while proceeding to the farm, the horse took fright, and ran away. The little girls were thrown out, and the plaintiff's right arm was fractured above the elbow. The child was properly cared for at the farm, and surgical attendance provided by defendant, and when able to be moved, she was taken to Leland.

Several medical gentlemen pronounced the injury a very serious one, while Dr. Hinkley, a surgeon of thirty-two years' practice, does not seem to have a fixed opinion that the injury will be permanent,—it may, or it may not be. He thinks the

removal of the child to Leland, did it no injury, and it was removed on his advice. That the difficulty of the joint was caused by want of proper care after the removal.

There was other testimony not of sufficient importance to be commented upon. The above are the prominent facts touching the alleged assault and violence, and it would seem to have consisted in the fact of placing the plaintiff in the buggy and driving off with her.

The question whether this was done by defendant without authority, was fairly left to the jury, and they have found he had no authority for so doing. It is apparent the act was done without violence, and there is no evidence that the plaintiff objected to the proceeding. The most that can be alleged of the act is, that it was a technical trespass.

In the absence of all malice, which was expressly disclaimed by appellee's counsel on the argument of this cause, we are at a loss to perceive on what grounds the jury rendered this large verdict of $4,000. No outrage was committed by appellant by placing the appellee, apparently with her consent, in the buggy, and the accident which befell was of a nature difficult to be guarded against, and though a painful injury was caused by it, no ground is perceived for the recovery of vindictive damages, as these appear to be, or smart money. Full compensation for the pain and suffering, loss of time, expenses incurred for surgical or medical attendance, and compensation for the injury, if permanent, is all that should be allowed.

On the latter point the testimony is by no means satisfactory, that the fracture will amount to a permanent injury. The appellee is young, and will, in all probability outgrow it, and her arm become useful. She stated in her testimony before the jury, that she could then use it.

There must have been something outside of the record, which had unconsciously to the jury an effect upon them to render this verdict, for there does not appear to be any thing in the record which can sustain it.

Malice being absent, the right is narrowed down to the recovery of mere compensatory damages. This being the

extent, the judgment must be reversed and the cause remanded, that a new trial may be had.

*Judgment reversed.*