———o———

## L. R. PERKINS, Respondent, vs. Mo., K. & T. R. R., Appellant.

1. *Railroads—Damage for ejecting passenger—Tender of fare—Effort to procure ticket.*—In an action for damages against a railroad company for ejecting plaintiff from defendant's cars, evidence that a friend of plaintiff offered to pay the amount claimed by the conductor, while the latter was attempting to put plaintiff off the train for refusal to pay his fare, was not proper evidence to show that plaintiff was from that time entitled to remain on the train, notwithstanding such refusal to pay in the first instance.

In such suit evidence that plaintiff had made an ineffectual attempt to procure a ticket before entering the train, although incompetent to show his right to remain on the cars without payment of fare, would be proper, nevertheless, in order to show his good faith in getting aboard without his ticket, and as a part of the *res gestœ*.

55 201
41a 306
41a 309
41a 310

55 201
116 93
116 166

55 201
119 342

55 201
69a 114

55 201
139 283

55 201
152 38

55 201
f 87a 212

55 201
102a 351
e102a² 608
102a ²609
102a ⁴616

55 201
174 525
e174 ¹530

2. *Railroads—Putting passenger out of train—Malice of conductor—Liability of company.*—Where it becomes ʎthe duty of a railroad conductor to put off a passenger for refusal to pay his fare, (Wagn. Stat., p. 307, § 28,) the company will be liable for any injury which may result to the passenger from the negligent or improper manner in which the conductor performs this act; and the company is bound when in such case the injuries are inflicted willfully or maliciously. When the agents of a corporation act in the scope of their authority in a willful or malicious manner, the company is responsible for resulting damages.

3. *Practice—Supreme Court—Jury—Evidence, etc.*—This court will not disturb the verdict of the jury on a question of conflicting evidence in an action for damages.

4. *Railroad Companies—When liable for malicious acts of their officers.*—*Semble* that where a conductor wrongfully and maliciously ejects a passenger from his train, the jury may, in addition to compensation for injuries received, assess exemplary or punitive damages, and *held*, that a slight circumstance, such as the retention of the officer in its employ by the company afterward, will be construed into a ratification of his act, and the company will be so liable.

*Appeal from Henry Circuit Court.*

*J. Montgomery,* for Appellant.

I. After plaintiff had refused to pay the regular fare, the defendant was under no obligation to transport him further, but had the right to eject him from the cars; and any subsequent offer to pay the fare did not affect this right. (O'Brien vs. Boston & Worcester R. R. Co., 15 Gray, 20.)

II. The court below erred in permitting the witness, Carr, to state, against defendant's objections, what passed between witness and the station agent, Berry, about there being no time to get tickets. There was no such issue in the pleadings, and the admission of this testimony had the direct effect of prejudicing the jury against defendant, by showing that defendant's agent was derelict in his duty, and that plaintiff had tried to buy a ticket at the station, and was unable to do so by reason of the agent's negligence.

III. The evidence shows that the injury to plaintiff was by a kick received by him in the face, after he was put off from the cars, and for this the defendant is not liable. The company then ceased to be liable for the acts of its employees, if such acts were beyond the line of their duty, or oppressive. The case of Goddard vs. Grand Trunk Railway,

reported in Redfield's Am. Railway Cases, Vol. II, 504, lays down the doctrine, that, if the carrier's servant willfully and maliciously assaults a stranger, the master will not be liable; but the law is otherwise when he assaults one of his master's passengers. Now after Perkins refused to pay his fare and was ejected from the cars, the relation of carrier and passenger no longer existed between defendant and him, and any act of the conductor from that time was his own act, not that of defendant.

IV. The court erred in instructing the jury that they could find punitory damages for plaintiff. (McKeon vs. Citizen's Railway Co., 42 Mo., 79.)

*La Due & Vance*, for Respondent.

I. If the passenger is assaulted and insulted through the negligence or the willful misconduct of the carrier's servant, the carrier is necessarily responsible. (Goddard vs. Grand Trunk Railroad, Am. Law Reg. (Jan. 1871), p. 17; Moore vs. Railroad, 4 Gray, 465; Railroad vs. Finney, 10 Wis., 388; Railroad vs. Vandiver, 42 Penn., 365; Landreaux vs. Bel, 5 La., 434; Railroad vs. Derby, 14 How., 418; Nieto vs. Clark, 1 Cliff., 145; Railroad vs. Blocher, 27 Md., 277; Weed v. R. R., 17 N. Y., 362.)

II. In Kline vs. Central Pacific Railroad, (37 Cal., 400,) it is held, that in a conductor's excluding a person who is not entitled to be admitted or to remain in the cars, the relation of master and servant is as clear and apparent as it is in receiving and providing for those who are entitled to admission. And in the same case it was held, that it was within the general scope of a conductor's authority to remove a person from the cars who was on wrongfully, but that, if in doing so he used unnecessary force or acted wantonly or maliciously, the company would be liable.

III. The damages were not excessive. (Goddard vs. Grand Trunk Railway, *supra*; Day vs. Woodworth, 13 How., 363.)

IV. The testimony in this case shows, that the company, after the act complained of, still retained the conductor in their employ

Vories, Judge, delivered the opinion of the court.

This suit was brought by the plaintiff to recover dama-
ges for injuries charged to have been sustained by plaintiff,
by the acts of the agents conducting a train of cars of the
defendant, in wrongfully ejecting plaintiff from the cars of
defendant when he was a passenger thereon.   The petition
in substance charges, that the defendant is a corporation or-
ganized under the laws of this State, and is the owner of
a railroad with locomotives and cars thereon, by which it
conveys passengers for hire; that on the 11th day of July,
1871, plaintiff got on the cars of defendant being run and
used on the line of said railroad, at the town or station of
Calhoun, to be carried and conveyed as a passenger to the
town of Windsor, situate on said road; that plaintiff at the
time paid defendant for such passage and conveyance the
sum of fifty-five cents, which sum was received and accept-
ed by defendant; that defendant thereby then received plain-
tiff into and upon said cars as a passenger and undertook
to transport him as aforesaid; that afterwards on said day,
when said cars were in motion and had reached a point about
one mile distant from Calhoun along the line of defendant's
road, said defendant, unlawfully intending to injure plaintiff
and to put him to great trouble and expense, wholly neglected
and refused to convey plaintiff to the town of Windsor, but
caused said cars to be stopped at a point upon the line of said
railroad, distant from any dwelling house or regular stopping
place on the line of said road, and forcibly and with violence
ejected plaintiff from, and refused to let him re-enter, said
cars, although plaintiff offered to pay defendant any reason-
able additional sum necessary and right, as a compensation
for such passage.

The petition alleges, that plaintiff was greatly abused, beat,
bruised, choked, kicked and wounded by defendant, the said
defendant wrongfully intending him, the said plaintiff, to be
put to great trouble and expense; that said defendant so in-
tending caused said cars to move off and leave plaintiff, un-
attended and weak from his wounds and exhaustion, to make

his way to some place of assistance; that by reason of said injuries and wrongful acts plaintiff was put to great trouble and expense, and was damaged in the sum of five thousand dollars, for which judgment is prayed.

The defendant answered, and denied that on the 11th day of July, 1871, the plaintiff got on to defendant's cars and paid the sum of fifty-five cents for his passage to the town of Windsor, as charged in the petition; but avers that on the contrary plaintiff refused to pay his fare, etc. It is then averred in the answer, that at the time stated in the petition plaintiff got on the car of defendant at said town of Calhoun, without having purchased a ticket, and without a pass; and after the train was in motion the conductor of the defendant on said car inquired of him where he desired to go. Plaintiff replied, to Windsor. He was then informed of the regular fare to Windsor, which plaintiff refused to pay; whereupon the conductor ejected plaintiff from the car, using no more force than was necessary for said purpose.

The answer then denies, that plaintiff was in any manner unjustly treated or injured by defendant or its employees in the discharge of their duties, or that he was put to any expense or trouble by any unlawful act of defendant; but charges, that plaintiff was so put off of the cars because of his refusal to pay the full and regular fare from and to the points named; denies that plaintiff was kicked, beat, bruised, choked or wounded, in the act of so putting him off from the cars as aforesaid, or that he was damaged thereby.

The plaintiff replied to this answer, admitting that he got on the car without first paying his fare; but denies all other affirmative allegations in the answer. A trial was had before a jury at the December term of said court for the year 1871. The jury after hearing the evidence, and the instructions of the court, found a verdict in favor of the plaintiff, and assessed his damages at the sum of $3500. The defendant in due time filed a motion for a new trial, which being overruled, it excepted and appealed to this court.

The evidence on the part of the plaintiff tended to prove, that

the plaintiff and one Carr, on the 11th day of July, 1871, in the afternoon or evening of said day, went to the town or station of Calhoun on defendant's railroad, in order to take passage from thence to Windsor, another station on said road about eight miles distant; that they got to Calhoun sometime before the train passing in the direction of Windsor arrived; that they had made an attempt to purchase tickets to Windsor, but the ticket agent was busy and they could get none; that the price charged for fare from Calhoun to Windsor was sixty cents when paid on the train, or at least that was what Carr was charged; that the plaintiff had eighty cents in money, but while on the platform just as he got on the cars he lost part of his money, so that after he entered the car he only had thirty cents; that plaintiff and Carr, when the train arrived, went into the car and took seats near together; that the conductor soon came along to collect the fare from passengers; that plaintiff after searching his pockets told the conductor that he had dropped part of his money on the platform, or near the platform, just as he got on the train, and that he only had thirty cents left; that the conductor then pulled the bell rope, telling plaintiff that game had played out; that the conductor seemed at once to get excited. Plaintiff told him not to get excited, that his companion, Carr, had money, and he would get money from him to pay his fare; that Carr then gave the conductor twenty-five cents in addition to the thirty cents given him by plaintiff; that the fare from Calhoun to Windsor was fifty cents or was so contended by plaintiff. The conductor then caught plaintiff by the throat, called others to his aid, pulled plaintiff to the door of the car; that plaintiff resisted, held to the seats and to the door to prevent his being thrown from the cars; that the plaintiff at the door expostulated with the conductor, telling him that, if they would act with a little reason, when the cars were stopped he would get off; that during the scuffle both inside and outside of the door of the car, the conductor struck and kicked plaintiff; that the cars were still in motion, and that Carr had offered the conductor, while they were engaged in putting plain-

tiff off, to pay whatever might be necessary to pay full fare for plaintiff, and that Carr had requested them not to injure or hurt plaintiff, as he had a large family to support; that Carr had also cautioned plaintiff not to let go and fall off the car, as if he did he would be injured; that, while plaintiff was holding on to the railing on the platform of the car, the contor kicked him violently in the face.

The plaintiff testified that the kicks in his face fractured his jaw-bone, and broke out of some of his teeth. The plaintiff, while testifying, was asked to state the effect the treatment received from the men on the train had upon his health up to the time of the trial? This question was objected to by the defendant, because the plaintiff was not competent, and, the objection being overruled, he at the time excepted.

The evidence further tends to show, that plaintiff was injured in his throat, and that his jaw was fractured; that it inflamed, and had to be lanced; and that portions of the bones were scaled off and came out, and that it is still unsound and will likely kill him unless an operation is performed and other parts of the bone removed. The evidence on the part of the plaintiff also tended to prove, that he was put off from the cars late in the evening, when there was no station or house on the road, and that the same conductor is still retained on the train of defendant.

The defendant introduced evidence which tended to prove that plaintiff had paid forty-five cents for his fare, and refused to pay any more, the fare being sixty cents; that after he refused to pay any more, the amount paid was offered back to him, which he refused to receive; that the money was placed on the seat by him, the cars were stopped, and plaintiff was put off by the conductor and others, who came to his assistance; that plaintiff resisted, and that it took some force to get him off, but he was not struck or bruised until he was off of the cars; that after plaintiff was put off from the cars, he held to the railing on the platform and grabbed at the conductor's face, caught and tore the conductor's hat, when the conductor kicked at him; that when plaintiff let go of the railing he fell

on the ground; and as he got up, he commenced gathering earth and gravel and threw it at the conductor and against the cars; that the conductor then went off from the cars, when he and plaintiff had a scuffle, when plaintiff was thrown down and choked; he then promised to quit throwing at the conductor and cars, when the conductor returned to the cars, and started on his way; that there were two houses in sight of where plaintiff was left, about from two to three hundred yards distant. It is not shown whether the houses were near the road or not. It was not dark when plaintiff was ejected from the cars. The defendant's evidence in other respects contradicted the evidence of plaintiff. At the close of the evidence, the court at the request of the plaintiff instructed the jury as follows:

1st. "If the jury believe from the evidence, that the plaintiff paid, or offered to pay, the conductor in charge of the train, when requested, the usual fare from Calhoun to the place of destination, to-wit: Windsor; and the conductor received the same, or refused to receive the same, and forcibly put plaintiff out of the car without lawful provocation, then the jury will find for the plaintiff, and assess the damages at such sum as they from the evidence believe will compensate plaintiff fr the injuries sustained."

2nd. "The jury are further instructed, that if they believe from the evidence, that the defendant by its conductor, agents or servants, unlawfully, wrongfully and maliciously put the plaintiff out of the cars and off the train of said defendant, as averred in the petition of said plaintiff in this cause, then in addition to assessing damages by way of compensation for injuries received by said plaintiff, they may assess such further amount by way of exemplary damages against defendants, as the jury in their judgment may see proper, not exceeding the sum of five thousand dollars, as claimed in plaintiff's petition."

3rd. "The jury are further instructed, that if they believe from the testimony that the plaintiff did not pay, or offer to pay, the conductor in charge of the train his fare from Calhoun to Windsor, or place of testination, and refused to pay the same

on being requested so to do, then the conductor was justified in putting plaintiff off the train, and using only the necessary force so to do, at some regular station or near some dwelling house as the conductor should elect. Yet if the jury further believe from the testimony, that the conductor and others, agents and servants of the defendant, acting under orders from the conductor, forcibly put plaintiff off from the train, and in so doing used unnecessary force, and unnecessarily beat, kicked and bruised plaintiff, while he was on the train, then the jury will find for the plaintiff, and assess his damages at such sum as they from the evidence believe a just compensation for injuries sustained, and they may also assess such further sum as exemplary or punitive damages, as will be a warning to the defendant and his agents, and which they believe proper under the evidence, not exceeding the sum of five thousand dollars sued for in the petition."

4th. "If the jury believe from the evidence, that the plaintiff paid, or offered to pay, to the conductor of the train the customary and usual fare from Calhoun to Windsor, the place he designed to stop at, and the conductor refused to receive the same, and refused to give plaintiff reasonable time to get the money out of his pocket, or from his friend there on said train, with intent to pay said regular and usual fare; and if the jury further believe from the evidence, that said conductor, agents or servants of said defendant, maliciously and violently put said plaintiff out of the car and off said train, then the defendant is liable and the jury should find for the plaintiff."

The defendant objected to said instructions, and his said objection to each of said instructions being overruled, he duly excepted. The court then, at the request of the defendant, instructed the jury as follows:

1st. "The court charges the law to be, that if any passenger on the train of any railroad in this state shall refuse to pay his fare, or shall behave in an offensive manner, or shall repeatedly violate the rules of the company owning such railroad, it shall be lawful for the conductor of the train, and the servants of

the corporation, to put him and his baggage out of the cars, using no unnecessary force, at any usual stopping place, or near any dwelling house, as the conductor shall elect on stopping the train."

2nd. "If the jury find from the evidence, that the plaintiff refused to pay the established fare when first requested so to do by the conductor, he from that time forfeited his right to longer remain in the cars, and any subsequent offer on his part to pay his fare would not in law compel the company to transport him further."

3rd. "If the jury find from the evidence, that a trespass or an assault was committed on the person of the plaintiff by the employees of the defendant after said plaintiff had been ejected from defendant's cars, the said employees and not the company are responsible for the loss and damages resulting therefrom.

There were other instructions given on the part of the defendant, which it is not necessary, to a full understanding of the points arising in the case, to recite. The court refused the following instructions asked for on the part of the defendant, to which the defendant saved exceptions, to-wit:

1st. "If the jury find from the evidence, that the employees of the defendant, in ejecting the plaintiff from the cars for the non-payment of his fare, wantonly used unnecessary force, they, and not the company, are responsible for the consequences."

2nd. "The court instructs the jury, that if they believe from the evidence that the plaintiff was hurt by the effect of a kick given him by one Hamilton, who was a conductor on the cars of defendant, and that said Hamilton gave him said kick willfully, and of his own free will and accord, then the defendant is not responsible for any injury that may be the result of said willful act, and they will so find."

The defendant in its motion for a new trial set forth as causes therefor all the usual causes set forth, as well as the rulings of the court herein before excepted to.

The points presented for the consideration of this court are the following:

*First.*—It is objected by the defendant, that the court improperly permitted evidence on the part of the plaintiff, tending to prove that after plaintiff had refused to pay his regular fare, and the conductor had commenced to eject him from the car, the witness, Carr, had offered to pay his fare for him ; and that the court also erred in permitting evidence that plaintiff had attempted to purchase a ticket before he entered the car.

*Second.*—That the defendant is not liable for the acts of its agents, where the acts were not done in the line of their duties, or when the acts done are malicious or oppressive.

*Third.*—That the court erred in instructing the jury that they were authorized to find exemplary or punitive damages.

The evidence tending to prove that Carr had offered to pay the balance claimed by the conductor, while the conductor was putting or attempting to put plaintiff off from the train, was not proper evidence to show that plaintiff was from that time entitled to remain on the car, notwithstanding his refusal to pay the fare demanded in the first place, and the court so instructed the jury. And it is not pretended, that the evidence tending to prove that the plaintiff had made an effort to procure a ticket before entering the car would entitle him to remain on the cars without the payment of his fare. The instructions of the court also contradict that supposition; but the evidence was proper to show the good faith of the plaintiff in entering the car, and as being a part of the transaction being investigated and to characterize the conduct of all of the parties engaged, and it was evidently for this purpose only that the evidence was admitted, which is plainly indicated by the instructions given by the court. The jury could not have been misled by the evidence.

It is contended by the defendant, that the plaintiff after entering the car refused to pay his fare, and thereby became a wrong-doer, and was not after that entitled to be considered as a passenger, and was therefore a stranger to defendant, so far as its duties were concerned, and that if the servants of the plaintiff in putting him off of the cars under such circumstan-

ces did willfully and maliciously strike or injure him, defendant is not liable for such willful acts. That the conductor of the train had a right to put plaintiff off from the train in a proper manner, if he refused to pay his fare, there can be no doubt, if it was done in a prudent manner. The authority is given by statute. Our statute concerning Railroad Corporations provides as follows: "If any passenger shall refuse to pay his fare, or shall behave in an offensive manner, or by repeated violations of the rules of the company, it shall be lawful for the conductor of the train and the servants of the corporation to put him and his baggage out of the cars, using no unnecessary force, at any usual stopping place, or near any dwelling house, as the conductor shall elect, on stopping the train." (1 Wagn. Stat., 307, § 28.)

This statute gives the authority to eject a passenger from the cars who refuses to pay his fare, and directs the manner in which it shall be done, and places the matter within the line of the duties of the conductors of the train, and there can be no doubt in reference to the liability of the company for any injury which might result to a passenger from the negligent or im-improper manner in which the conductor should perform the duty. But it is insisted, that for willful or malicious injuries inflicted by the conductor in the performance of this duty or right the company is not liable. I do not think that this position is tenable. Corporations only act by agencies, and whatever their agents do within the scope of their authority is reallythe act of the corporation; and if the agents, in acting within the scope of their authority, act in a willful or malignant manner and damage ensue, they are certainly responsible, and particularly in cases where they are acting with reference to those to whom the corporation are under obligations by law to treat in a different manner. Hence it has been frequently held, that a conductor on a train on a railroad is acting within the scope of his authority when putting persons of the cars who fail to pay their fare, and if while doing so he act in a willful and malicious manner and injury thereby occur, the railroad company is liable therefor. (Kline vs. Central

Pacific R. R., 37 Cal. 400 ; Moore vs. Fitchbury R. R. Co., 4 Gray, 465 ; Penn. R. R. Co. vs. Vandiver, 42 Penn. St: 365 ; Weed vs. Panama, R. R. Co. 17 New York, 362; Philadelphia & Reading R. R. Co. vs. Derby, 14 How. U. S., 468 ; Goddard vs. Grand Trunk R. R. Co., Am. Law Reg. [Jan. 1871,] p. 17.)

It is further contended by the defendant, that from the evidence in this case the injuries of which the plaintiff complains, if committed by the conductor of the train of defendant, were committed in a difficulty and rencounter between the conductor and plaintiff after he was ejected from the car, which was brought about by the fault of plaintiff and wholly unconnected with the act of the agents of defendant in ejecting plaintiff from the car; and that therefore the defendant is not responsible therefor. It is a sufficient answer to this to state, that upon this subject the evidence is conflicting, and the question, as to when the injuries were inflicted whether on the cars or after the plaintiff was off the cars, was properly submitted to the jury, and we cannot interfere with their finding on that subject.

The only remaining question presented for our consideration is as to the propriety of the instruction given by the court, by which the jury are told, that, if the conductor and agents of defendant, wrongfully and maliciously put the plaintiff out of the car, in such case they might, in addition to compensation for the injuries received, assess such further amount by way of exemplary damages, as they in their judgment might deem proper, not exceeding the amount sued for. This presents a question of more difficult solution. The law is now settled in this State at least, and in most of the courts of the different States, that in actions of tort, when the damages complained of have been wilfully, maliciously or wantonly committed, the plaintiff may recover exemplary or purnitive damages.

In the case of McKeon vs. Citizens Railway Co., (42 Mo. 79,) it was doubted whether exemplary damages could be recovered in any case ; but from this view of the law Judge Wagner dissented. In a later case decided in this court, (Buckley vs.

Knapp, 48 Mo. 152,) the right to recover exemplary damages in actions for willful and malicious wrongs was fully discussed and the authorities fully reviewed, and the right to recover exemplary damages fully sustained and upheld. (See also Sedg. Meas. Dam., 520.) This rule is however subject to some qualifications. One of these qualifications is, that a principal cannot in general be compelled to pay exemplary damages for the fault of his agent, if it be neither ratified or authorized by the principal; but slight acts of ratification will generally be sufficient. In the case of Goddard vs. The Grand Trunk Railway Co., before referred to, where the brakeman on the cars assaulted and grossly insulted a passenger, it was held that the mere retention of the brakeman by the company, after it was informed of the conduct of the brakeman, was a sufficient ratification of the act, and that punitive damages were recoverable. In the State of Mississippi it seems to be held, that railroad companies are liable for exemplary damages for the wanton and malicious acts of their agents, and in the State of Kentucky the same rule is adopted. (Bawser vs. Lane, 3 Metc., 311.)

The only way, in which corporations can act in the commission of wrong or otherwise, is by and through their agents. The acts of their agents within the scope of their authority are their acts, and it would seem that there could be no good reason why they should not be responsible for the acts of their agents in the discharge of their duties, when performed in a wanton and malicious manner, just as if the act had been done by the corporation itself. In fact, the act of the agent is the act of the corporation, and in this case the evidence shows, that the conductor, who committed the wanton acts out of which the damages accrued, was at the time of the trial retained by and is still in the employ of the defendant. It will be seen, that the issues of fact in this case were most liberally on the part of the defendant submitted to the jury by the instructions given by the court, and that the instructions refused, with the foregoing view of the case, were properly refused.

The judgment will be affirmed. The other judges concur.