Frank Edelmann, Respondent, *v.* St. Louis Transfer Company, Appellant.

April 24, 1877.

1. Where the word "negligence" is used, in an instruction, in its popular sense, and defendant offers no instruction defining negligence, he cannot afterwards complain that the jury was not instructed as to its meaning.

2. To justify exemplary damages, evidence should be given tending to show that the act by which the injury was sustained was willful or intentional, or what the law considers equivalent to a willful or intentional act.

3. In an action for injuries sustained by the negligence of defendant's servant, the fact that he was not discharged, but was retained in defendant's employ, does not tend to prove a ratification, so as to authorize the jury to give punitive damages.

Appeal from St. Louis Circuit Court.

*Reversed and remanded.*

*S. M Breckinridge,* for appellant, cited : Dassler *v.* Wisley, 32 Mo. 498 ; The Missouri Coal Oil Co. *v.* Hannibal & St. Joseph R. R. Co., 35 Mo. 84 ; Kennedy *v.* North Missouri R. R. Co., 36 Mo. 350 ; McPheeters *v.* Hannibal & St. Joseph R. R. Co., 45 Mo. 22 ; Mueller *et al. v.* Putnam Fire Ins. Co., 45 Mo. 84 ; Perkins *v.* Missouri, Kansas & Texas R. R. Co., 55 Mo. 201.

*J. D. Johnson,* for respondent, cited : Malecek *v.* Tower Grove & Lafayette R. R. Co., 57 Mo. 21 ; Buckley *v.* Knapp, 48 Mo. 162 ; Picket *v.* Crook, 20 Wis. 358 ; Wallace *v.* The Mayor, 2 Hilt. 440 ; Perkins *v.* Missouri, Kansas & Texas R. R. Co., 55 Mo. 201 ; Gillett *v.* Missouri Valley R. R. Co., 55 Mo. 315 ; Belknap *v.* Boston & Maine R. R. Co., 49 N. H. 358..

Hayden, J., delivered the opinion of the court.

This is an action to recover damages for injuries received by the plaintiff, a minor, by being thrown, as he alleged, from a wagon through the negligence of an agent of defendant, who was driving one of its transfer-wagons. The collision took place on Green Street in the city of St. Louis,

between Main and Second Streets. The plaintiff was driving a horse in a light spring-wagon, westwardly, and observed one Sheedy, a driver for defendant, approaching from the west, driving a large two-horse stake-wagon heavily loaded with boxes. As Sheedy approached, the plaintiff kept his team to the north side of the street, and the testimony tended to show that there was plenty of space between the plaintiff's wagon and the south side of the street for the defendant's wagon to pass. The plaintiff's testimony was to the effect that, fearing that the transfer-wagon would run into his wagon, he stopped when the transfer-wagon was five or ten feet away; that he called out to its driver to stop, but that the driver paid no attention; that this was when the transfer-wagon was four or five feet away; that he, plaintiff, drove as near to the curb-stone as he could; that by the collision he was knocked out of his wagon into the street; that when the transfer-wagon struck his wagon its horses were at a fast walk. The defendant's driver separated the two wagons and drove immediately away. The testimony of Sheedy was to the effect that as he was driving a pair of mules attached to the transfer-wagon, which was heavily laden, toward Main Street, he noticed a wagon standing on the south side of Green Street, a little way ahead, and then the plaintiff's wagon came on at a rapid pace, striking with the hub of its front wheel the hind wheel of the transfer-wagon; that he took by the head the horse attached to the plaintiff's wagon, but did not go to the boy or assist him. His testimony tended to show that, at the place of collision, the three wagons were abreast, or on the same line north and south; that his mules were going at a walk at the time of the collision, and that he did not see the plaintiff's wagon until that team was within a foot of the head of his mules, and that he heard no call or cry from the plaintiff.

The following were given as instructions on behalf of the plaintiff:

" 1. If the jury believe and find from the evidence that the plaintiff, Frank Edelmann, was injured, as is alleged in the petition, by the negligence or carelessness of the defendant, its servant or employee, by the means and in the manner charged in the petition, and that he, Edelmann, did not contribute to said injury by any negligence of his own, then they will find for the plaintiff, and assess his damages in such sum as the jury believe and find from the evidence will compensate him for the injury sustained, including his necessary expenses in and about effecting a cure of his injuries, his loss of time, and his mental and bodily suffering resulting therefrom, not exceeding the sum of five thousand dollars.

" 2. If the jury believe and find from the evidence that the injury complained of in plaintiff's petition was caused by gross and wanton recklessness or carelessness of the defendant, its servant or employee, in driving one of defendant's teams, as is alleged in the petition, and without any fault on the part of the plaintiff, then they will find a verdict for the plaintiff, and, in addition to such sum as will compensate for the injury sustained, may give exemplary damages in such sum as the jury believe from the evidence the circumstances of the injury will warrant, in all not to exceed the sum of five thousand dollars."

The court gave the following instructions on behalf of the defendant:

" 1. If the jury find from the evidence that the carelessness, negligence, or imprudence of the plaintiff contributed directly to the injury, or that the driver of the transfer-wagon willfully caused the injury, not to promote the interests of his employers, nor within the scope of his employment, but out of malice, ill-will, or anger, and for purposes of his own solely, then the jury will find for defendant.

" 2. If the jury find from the evidence that the carelessness, negligence, or imprudence of the plaintiff contributed

directly to the injury, they will find for the defendant, even though they should find that the driver of the wagon, by his carelessness, negligence, or imprudence, also contributed thereto in equal degree.''

The defendant asked and the court refused instructions to the effect that, if the jury found for the plaintiff, the damages could only be such as would compensate for loss of time, money expended, and actual suffering caused by the injuries ; and that the jury could not give vindictive or exemplary damages.   The plaintiff had a verdict for $1,772.

The appellant contends that there was error in giving the first instruction for the respondent, as it refers to the jury the question what the issues are.   If this were so, it would render the instruction bad, as it is the duty of the court to sift the pleadings and state what the issues are.   But it is evident that in the present case the jury are not referred to the pleadings to find the issues.   The reference, evidently made for the purpose of shortening the instruction, is to matters of description which are parts of the narrative, and not to the essential questions in the case, which are apparent from the instructions.   As a matter of practice, however, it is better, in instructions, to avoid references to the pleadings, as the line is sometimes narrow which separates mere matters of description from issuable facts.

The appellant complains that no definition of negligence is given, and that the jury are left to find what it means. But the word '' negligence '' is not a merely technical term. It is an English word of well-known meaning, and so used in the instruction, and the fact that under certain circumstances courts of law have to decide what constitutes negligence does not destroy the popular character of the word.   If the appellant wished any particular declaration of law pertaining to the subject of negligence, he should have asked it.

The objection to the second instruction is well founded. The evidence in the case was not such as to call for exemplary damages, or instructions in regard to such dam-

ages. Such instructions should be strictly confined to cases where the law allows punitive damages to be given. It seems, indeed, to be true that the driver of the defendant's wagon was very careless; that there was ample room for him to pass, and that he should have looked out in time and have avoided the wagon of the plaintiff; but the mere fact that a person is very careless does not render him liable to punitive damages on account of an injury resulting from such carelessness. To justify the instruction there should have been evidence tending to show that the act was willful or intentional, or what the law considers as amounting to a willful or intentional act. As the Supreme Court of the United States said in *Philadelphia, etc., Railroad Company* v. *Quigley*, 21 How. 214: " Whenever the injury complained of has been inflicted maliciously or wantonly, and with circumstances of contumely or indignity, the jury are not limited to the ascertainment of a simple compensation for the wrong committed against the aggrieved person. But the malice spoken of in this rule is not merely the doing of an unlawful or injurious act. The word implies that the act complained of was conceived in the spirit of mischief or criminal indifference to civil obligations. Nothing of this kind can be imputed to these defendants." *Goetz* v. *Ambs*, 27 Mo. 28; *Kennedy* v. *North Missouri R. R. Co.*, 36 Mo. 351; *Franz* v. *Hilterbrand*, 45 Mo. 121; *Perkins* v. *Missouri, Kansas & Texas R. R. Co.*, 55 Mo. 214; *Gould* v. *Christianson*, Blatchf. & H. 507; *Louisville & Portland R. R. Co.* v. *Smith*, 2 Duv. 556; *Hyatt* v. *Adams*, 16 Mich. 180; *Pierce* v. *Millay*, 44 Ill. 189. In some cases the element of willfulness does not appear directly, but is arrived at by inference. Thus, from circumstances of aggravation and outrage, willfulness or intentional wrong may be inferred. So, where it is said in cases of gross negligence the jury may give vindictive damages, what is meant is such excessive negligence as argues that reckless

disregard of probable consequences which the law considers equivalent to a willful or intentional act. The use of the the word " gross " in this connection, in instructions, is not to be commended. It is liable to mislead juries, as they are apt to confound the character of the act with the nature of the proof, and to suppose that a party is grossly negligent when he is only clearly and palpably negligent. Besides, it is indefinite, and, if unexplained, affords no basis of distinction. *McPheeters* v. *Hannibal, etc., R. R. Co.*, 45 Mo. 26.

The fact that the defendant did not discharge its driver after learning of the accident had no tendency to prove a ratification by defendant of his act. To hold the defendant liable for vindictive damages by virtue of a ratification, the plaintiff must at least prove some affirmative act. Mere negation, or absence of action, cannot operate as a ratification in any such case as the present. The fallacy lies in assuming that there was some obligation on the defendant to act, and to conclude itself by its action. If it discharged the driver on account of the accident, this would be taken as evidence of its liability; else, it would be argued, why discharge him? If, on the contrary, there is no discharge, a ratification is inferred. This would be to reduce parties to a dilemma to which the law does not drive them. The law can make no distinction between cases which are plain and those which are not plain. An investigation may completely alter the aspect of the case; and it is the right of a party charged to have the investigation made under the safeguards provided by law. The defendant was entitled to stand on its legal rights, and the plaintiff to stand on his legal remedies. The foreman of the company had no personal knowledge of the accident, and neither by word nor deed sanctioned any wrong-doing. It is true, as said in *Perkins* v. *Missouri, Kansas & Texas R. R. Co.*, 55 Mo. 214, that slight acts of ratification may be sufficient; but the mere omission to act, when action might compromise the

legal rights of a party, is not sufficient. In such cases there is no legal obligation upon the person to act, and, where there is none, inaction cannot ratify.

There was no evidence tending to prove that the injury was willful on the part of the driver of defendant, or that he did the act out of malice, ill-will, or anger, and for purposes of his own, and this part of defendant's instruction should not have been given.

The judgment is reversed and the cause remanded. All the judges concur.