BRITTON v. CITY OF ST. LOUIS *et al., Appellants.*

Division Two, February 27, 1894.

1. **Municipal Corporation:** DEFECTIVE ALLEY: EVIDENCE. In an action against a city and contractor for injuries received from falling into an unprotected excavation in an alley, it is competent for plaintiff's witness, in the absence of evidence showing that any one but plaintiff had fallen into the ditch, to testify that such witness had visited the place the next morning after the accident and saw marks indicating that plaintiff had fallen into the excavation as claimed by him.

120  437
122  151

120  437
131  398
64a 202

120  437
132  344

120  437
143  633

120  437
85a 331

120  437
162  463

120  437
91a  15

120    437
95a  [6]626

120    437
101a [2]428

Britton v. The City of St. Louis.

2. ——: ——: PERSONAL INJURIES: INSTRUCTION. An instruction that if 'the excavation "mentioned in plaintiff's petition" was made by defendant contractor by permission of the city and was made in the alley "in the petition, mentioned" and negligently left unprotected and that plaintiff without fault fell into it and was injured, the jury should find for the plaintiff, is not open to the objection that it refers the jury to the petition to ascertain the issues where the existence of the excavation was conceded.

3. ——: ——: ——: ——. Nor is such instruction objectionable on the ground that it fails to leave the question of negligence to the jury.

4. Practice: PERSONAL INJURIES: INSTRUCTION: MEASURE OF DAMAGES. An instruction on the, measure of damages *held* to have a sufficient basis in the averments of the petition.

5. ——: WILLFUL FALSE SWEARING: INSTRUCTION. Where the evidence is irreconcilable it is proper to instruct the jury that if they believe that any witness has knowingly sworn falsely to any material fact, they may discredit his entire testimony.

6. ——: PERSONAL INJURIES: DEFECTIVE ALLEY: INSTRUCTION. Where the court instructed that the jury must find that plaintiff fell into the excavation in the alley to entitle him to recover, it rightly refused to instruct that if he fell in an excavation on private property the city is not liable.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*W. C. Marshall* for appellant, city of St. Louis.

(1) There is no evidence to support the verdict. (2) The trial court erred in giving erroneous instructions asked by the plaintiff. Courts should tell the jury what issues are to be tried and not refer them to the pleadings. Such instructions are erroneous. *Cocker v. Cocker,* 2 Mo. App. 451; *Edelmann v. Transfer Co.,* 3 Mo. App. 505; *Remmler v. Shenuit,* 15 Mo. App. 192; *Hays v. Railroad,* 15 Mo. App. 584: *Proctor v. Loomis,* 35 Mo. App. 482; *Flieschman v. Miller,* 38 Mo. App. 177. (3) Plaintiff's third instruction is

erroneous in authorizing the jury to disregard the entire testimony of any witness believed to have knowingly sworn falsely to any material fact. There was no evidence authorizing the instruction. *Bank v. Murdock*, 62 Mo. 70; *State v. Brown*, 64 Mo. 367; *White v. Maxey*, 64 Mo. 552; *Fath v. Hake*, 16 Mo. App. 537; *Smith v. Railroad*, 19 Mo. App. 120; *Batterson v. Vogel*, 10 Mo. App. 235. (4) And such an instruction is not harmless where there are two issues in a case which the jury might decide either way. *Fath v. Hake*, 16 Mo. App. 537; *Evans v. Railroad*, 16 Mo. App. 522. (5) There being no controversy in this case that at the close of business hours on December 23, the contractor covered over the excavation, and placed a red signal light on the embankment, neither the contractor nor the city can be held liable thereafter, even if the light and the cover over the excavation were removed. *Bell v. Independence*, 41 Mo. App. 469; *Myers v. Kansas City*, 108 Mo. 480. (6) The verdict in this case is excessive.

*E. B. Sherzer* for respondent.

(1) Defendants' instructions for nonsuit were properly refused. There was testimony to go to the jury and abundant evidence to support the verdict. (2) Plaintiff's instruction number 1 did not refer the jury to the petition to find the issue. *Corrister v. Railroad*, 25 Mo. App. 619. (3) The negligence charged was properly left to the jury. *Russell v. Town*, 74 Mo. 480. (4) Plaintiff's instruction number 4 was properly given. So plaintiff's third instruction was justified by the evidence in the case. *Seligman v. Rogers*, 113 Mo. 642. (5) Defendants' refused instructions were properly denied. (6) The damages were not excessive. *Gorham v. Railroad*, 113 Mo. 408; *Murray v. Railroad*,

101 Mo. 236; *Schmitz v. Railroad* (Mo. App.) not yet reported; *Conway v. City*, 119 Ill. 489; *Railroad v. Hill*, 34 N. E. Rep. 646; *Railroad v. Yarborough*, 83 Ala. 238; *Burdoin v. Trenton*, 22 S. W. Rep. 728; *Rosenkranz v. Railroad*, 108 Mo. 9; *Gurley v. Railroad*, 104 Mo. 211; *Darby v. Knapp*, 2 Mo. App. 486; *Craig v. Durette*, 1 J. J. Marsh. 366.

GANTT, P. J.—This is an action for personal damages, against Killoran, a contractor, and the city of St. Louis, for negligence in leaving a deep and dangerous excavation, in a public alley in said city, unguarded and exposed, whereby plaintiff was precipitated into it on the night of December 23, 1889, and received permanent injury to his left knee and suffered loss of time, being a day laborer, and his physician's bill, bodily pain and mental anguish to his damage in the sum of $10,000. The answer was a general denial and contributory negligence. The plaintiff recovered a judgment against both the contractor and the city for $3,500.

The place where the injury occurred was at the intersection of the north and south alley with the east and west alley in city block number 3447, being between Bell avenue on the north, Morgan street on the south, Vandeventer avenue on the east, and Sarah street on the west. Neither alley extended all the way through the block, but ran only to this intersection at right angles, just west of Vandeventer, forming practically one alley. Immediately on the southwest corner of Vandeventer and Bell avenues there was a vacant lot having a front of about one hundred feet on Bell street, and extending southwardly about one hundred and fifty-five feet to the twenty-five foot lot which fronted Vandeventer avenue and the rear of which was the east line of the north and south alley and the eastern

terminus of the east and west alley. Immediately west
of the one hundred foot lot, Martin Connelly owned
thirty feet fronting Bell avenue, and which extended to
the twenty-five foot lot which fronted Vandeventer
avenue. Connelly's lot did not abut either of said
alleys, but his west line was eight feet six inches east
of the intersection of the east line of the north and
south alley with the north line of the east and west
alley. Along Connelly's west line there was a board
fence extending from Bell avenue to a line coincident
with the prolongation of the north line of the east and
west alley. The depot of the St. Louis Cable and
Western Railway was located immediately west of the
north and south alley, and immediately south of the
east and west alley and fronted on Morgan street. In
order to go from the depot to the corner of Bell·
and Vandeventer avenues, the plaintiff and other
employees of the railroad were in the habit of going into
the north and south alley, thence cutting across the
twenty-five foot lot which fronted on Vandeventer
avenue, to the corner of the fence on the west of
Connelly's lot, thence across Connelly's lot, and
diagonally across the one hundred foot lot aforesaid. ·

On the night of December 23, 1889, plaintiff, an
employee of, and laborer on, the Narrow Gauge for
three years, who, with three other employees (Miller,
Washoe and Horning), had, on invitation, made a
friendly visit to the roadmaster (Auster) at his home,
north beyond Bell and near Vandeventer, was, with
them, near 12 at night, returning to take the last train
home, which left at 12 o'clock. Having but a few
minutes to spare, they hurried along south on Vande-
venter to southwest corner near Bell, when hearing
engine bell ringing, and fearing to miss train, Britton
and Miller started across the plat of vacant lot as
nearest route, and which they had frequently traveled

before, making for the gate on the east and west alley, opening beyond roundhouse on the tracks of Narrow Gauge.   The others went down Vandeventer to Morgan, then up to depot.   Though dark, being from frequent traveling thereon perfectly familiar with location and pathway, which "showed up a little white" in darkness (Britton in the lead), they hurried over the path to Connelly lot on which it forked, took "left hand" path running near southeast corner of Connelly lot, then on south adjoining lot, and approaching mud hole thereon (the water in which "glimmered"), skirted the same to avoid west fence which lay north thereof (location of which they fixed by mud hole).   Just after passing the mud or water hole (which they did between it and fence) a few steps, Britton fell into an excavation, the existence of which, up to that time, was unknown either to him or his companions.

Through these alleys there was a public sewer, with a manhole some five or six feet from the east line of the alley.   About the sixteenth of December, defendant Killoran, having a contract therefor, began to excavate for a vault, on the rear end of Connelly's lot and to dig a trench from the vault to the corner of the fence and by permission of the owner of the twenty-five foot lot, he dug the trench along the corner of said lot extending from the corner of the fence to the east line of the east and west alley, thence through the alley, under the permit from the city, to the manhole.   Fahey testified he commenced the trench in the alley on the twenty-second day of December and finished the twenty-third. He dug the trench from three to seven feet deep, according to the various estimates.   Plaintiff and Miller, who accompanied him, testified that plaintiff fell into this ditch in the alley about two and one-half feet from the manhole; that they knew where the man-

hole was, and Miller testified he had hold of it when assisting plaintiff out of the ditch.

There is no dispute that the manhole was in the alley; that the ditch was dug to connect it with Connelly's lot; nor is there any dispute that plaintiff fell and was seriously hurt. The controversy arises over whether plaintiff fell into that portion of the ditch in the alley, or the part that was on the private ground, and as to this the evidence of plaintiff and Miller, the only witnesses who were present, is that he fell in the alley. The main issue was whether the excavation was covered, and had danger lights.

On this point the evidence is irreconcilable. Plaintiff's witnesses say there were no lights at the time he fell and none next morning, and it was not covered at all. Defendant's witnesses say it was covered and the lights were put out at 5 o'clock, and were burning next morning.

The assignments of error are:  *First.*  There is no evidence sufficient to support the verdict. *Second.* The circuit court erred in admitting incompetent evidence offered by plaintiff. *Third.* The circuit court erred in giving improper and erroneous instructions asked by plaintiff, and refusing proper instructions asked by the city. *Fourth.* The judgment is excessive.

I.  The first point is one that might, and doubtless was, urged by counsel to the jury, that plaintiff fell into the ditch on the private lots, but there was sufficient material evidence, if believed by the jury, to show that the injury was occasioned by a fall into the uncovered excavation in the alley. The demurrer to the evidence was properly overruled.

II.  When Miller, one of plaintiff's witnesses, was testifying, he stated that he went next morning to the place where the accident happened; that he then saw the marks where plaintiff had slipped into the ditch

and it was nearly against the manhole. Defendant objected to this evidence as immaterial and incompetent, and the objection being overruled, excepted.

There was no error in the admission of this evidence. The proof of the physical fact, the prints of plaintiff's feet in the fresh dirt of so recent an excavation, from the examination made at 7 o'clock next morning after the accident at midnight, rendered it extremely probable that no change had taken place and tended to show the exact point at which plaintiff fell as well as the allegation that the excavation was uncovered at the time. In the absence of all evidence that any one else had fallen in the ditch, it was competent. It did not raise a collateral issue, but tended to prove the fact alleged. Moreover the general objection was not sufficient. *Margrave v. Ausmuss*, 51 Mo. 561; *Society v. Lackland*, 97 Mo. 137.

III. The defendant objected to the first instruction given for plaintiff which was in these words:

"1. The court instructs the jury, that it was the duty of defendant, the city of St. Louis, to keep its alleys reasonably safe for passage and travel thereon; and if they believe from the evidence that the excavation, mentioned in plaintiff's petition, was made by defendant Killoran, under authority or by permission of the city of St. Louis, and was made in the alley, in the petition mentioned, and that the same was, through the negligence or carelessness of defendants, or their servants or agents, permitted to remain open and unprotected, or insufficiently guarded, and that plaintiff, in passing along said alley on the night of December 23, 1889, without any fault or negligence on his part, fell and was precipitated into said excavation, and was injured thereby, they will find for plaintiff against both defendants."

The specific objections are, *first*; that it refers the

jury to the petition to find the issues; and, *second*, it fails to leave the question. of negligence to the jury.

It is plain that the instruction is not obnoxious to the first objection. It does not refer the jury to the petition to find any issue, it merely refers to the excavation described in the issue merely to make the instruction more concise. The excavation was a conceded fact in the case and the court could have properly assumed it, as it was nowhere and by no one controverted. While we recognize and approve the rule of practice that the jury must not be left to the pleadings to ascertain the issue, it is very clear that this instruction is not open to such a criticism. *Edelmann v. Transfer Co.*, 3 Mo. App. 503; *Corrister v. Railroad*, 25 Mo. App. 619.

Nor is the other objection tenable. The jury were authorized to find for plaintiff if the defendants, their servants or agents, negligently permitted the excavation to remain open and unprotected, or insufficiently guarded; and plaintiff, without fault on his part, fell into it. This correctly stated the law and left the jury to find the facts.

The only other instructions given for plaintiff are these:

"2. The court instructs the jury, that if they find for the plaintiff they will, in estimating his damages, take into consideration not only his age and condition in life, the physical injury inflicted, and bodily pain and mental anguish endured, together with the loss of time occasioned by said injury, and all reasonable expenses incurred for medical services in and about the treatment of his case, but also any and all such damages, if any, which they may believe, from the evidence, will result to him in the future as the direct result of his injuries.

"3. The court instructs the jury, that they are the

sole judges of the weight of the evidence and the credi-
bility of the witnesses, and if they believe from the
evidence that any witness has knowingly sworn falsely
to any fact material to the issue in this case, they may
disregard his entire testimony.''

The instruction number 2 is challenged because it
is claimed that there is no basis for it in the petition.
The averment is this: plaintiff fell therein (referring to
the excavation) and suffered severe and permanent
injury; that his left leg about knee was bruised,
sprained and injured so as to permanently impair the
future use of it, and disabled him, caused his confine-
ment in bed and for long time in house, and incapac-
itated him from work and labor ever since. That
besides loss of time he was put to great expense in
treatment of injuries incurred; expense of physicians
about $100. He suffered great bodily pain and mental
anguish to his damage, $10,000.

No objection was made to the admission of his
evidence showing that he was a day laborer dependent
on his work for a living; that he was confined two
months to his bed; was on crutches four or five months
and when he started to work had to give it up; that it
was a year before he could work steadily; that his knee
was permanently injured. We think that this objec-
tion, coming after the evidence had been admitted,
without objection, comes too late. The allegation,
while indefinite, is sufficient notice of his claim for
damages for loss of time as one of the consequences
resulting from his injury. *Smith v. Railroad*, 119 Mo.
246.

There was no error in giving plaintiff's third
instruction. The evidence was irreconcilable. It was
not a matter of opinion. Either plaintiff's witnesses
were falsifying in regard to the absence of the danger
signals or lights and the covering of the ditch, or

defendants' were.   It was a case where, if a witness had willfully sworn falsely, his testimony ought to have been discredited.  It was for the jury to determine which told the truth.   It was a proper case for the instruction.

IV.   There was no error in refusing defendants' fourth instruction.   By plaintiff's first instruction the jury were required to find that plaintiff fell in the excavation in the public alley.   It was entirely unnecessary to give one for defendant to the effect that if he fell in a ditch on private property, the city was not liable.   It tendered an issue not in the case, it was properly refused.

Nor was there any necessity for defendants' fifth instruction.   The court had defined "negligence" and "ordinary care" correctly and instructed the jury that the city was not an insurer of the safety of those who travel its streets and alleys and that before a verdict could be rendered against it, it must appear it was guilty of negligence and that plaintiff was not guilty of contributory negligence.   The instructions were liberal to the city and no others were necessary.

The verdict is not excessive.   The permanent injury to the knee joint; the suffering endured, and the disability to labor, were all before the jury, and there is nothing to indicate passion or prejudice.   The judgment is affirmed.   All of this division concur.