·FRANCIS W. RANDOLPH, by DARWIN J. ADKINS, his Next
   Friend, Respondent, v. THE HANNIBAL AND St.
   JOSEPH RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, July 6, 1885.**

1. PRACTICE — PARTIES SUING BY NEXT FRIEND. — Where a petition
   alleges the infancy of the plaintiff and the appointment of a next
   friend, this is an issuable fact, and if properly put in issue by the
   answer, a failure to make proof of it is fatal to recovery. But this
   issue is not raised by general denial. Nor can it be raised after a
   verdict in favor of the defendant. *Holton v. Towner*, Sup. Ct. Mo.,
   not yet reported.

2. ——— COMPETENCY OF EVIDENCE.—Where acts of misconduct and
   maltreatment are a part of the same transaction, although not all
   in the same place, or in any given moment, they constitute, never-
   theles, one continuous act, and are admissible in evidence as illus-
   trating and characterizing the transaction complained of.

3. RAILROADS—POWERS OF CONDUCTORS—CORPORATE LIABILITY.—"The
   whole power and authority of the corporation *pro hac vice* is vested
   in conductors (as to their relation to passengers), and as to passengers
   on board the cars, they are to be considered the corporation itself,
   the corporation being responsible for the acts of these officers in the
   conduct and government·of the train, to the passengers traveling by
   it, or the officers would be for themselves if they were the owners
   of the road and train." Adopting language of Ryan, Ch. J., in
   *Bass v. Railroad Co.* (36 Wis. 463).

4. DAMAGES—RULE OF'AS TO COMPENSATION.—The general rule is that
   "pain of mind, when connected with bodily injury, is the subject
   of damages, but it must be so connected in order to be included in
   the estimate, unless the injury is accompanied by circumstances of
   *malice*, insult, or inhumanity." *Trigg v. R. R. Co.*, 74 Mo. 153.

APPEAL from Clay Circuit Court, HON. GEO. W.
DUNN, J.

*Affirmed.*

Statement of case by the court.

This is an action to recover damages for a personal
assault and battery committed upon the plaintiff by one
of defendant's conductors, and for indignities and in-

sults connected therewith. The plaintiff is a minor, and sues by his next friend. The facts, as alleged in the petition and established at the trial, are substantially as follows : The plaintiff, a minor, was attending college at Liberty, Missouri. Desiring to visit Kansas City, he purchased of defendant's station agent at Liberty, a round trip ticket from Liberty to Harlem, the latter station being on the north side of the river, opposite Kansas City. From Harlem station the plaintiff walked over the bridge to Kansas City, and then back to Harlem, where he took passage on defendant's train for Liberty. The conductor, E. C. Beaman, took from plaintiff said ticket, and, on looking at it, accused plaintiff of surreptitiously coming aboard the train at Kansas City, and of attempting to defraud the company and the bridge company of its dues. Plaintiff assured him he had come aboard at Harlem ; but the conductor persisted in his accusation, and jerked plaintiff's hat off, saying, "that gives you away. It has been raining, and your hat is not wet." Plaintiff called a gentleman to witness that he did get on at Harlem, who stated to the conductor that plaintiff came in the car there, but he could not state where he got on. Plaintiff then suggested that a friend was in the adjoining car who was with him when he came aboard, and he would satisfy the conductor by that witness.

The talk and manner of the conductor was loud and offensive, attracting the attention of the passengers. Plaintiff was quiet in his demeanor, but said if any one said he got on the train at Kansas City, it was a lie. Whereat the conductor assaulted and struck him in the face. His face was bruised, so much so that it was quite noticeable the day after. The conductor then passed on collecting fares, and went into the adjoining car, where plaintiff's friend was who saw him get on at Harlem. Plaintiff followed the conductor there, and told him here is the man who saw him, and he wished the conductor to state before the passengers that he had wronged him in the matter. Whereat the conductor again assaulted and abused him. The defendant discharged the conductor,

and offered apology and compensation to plaintiff, who, however, had then brought this suit.

The jury awarded the plaintiff $750 as damages, and the defendant has brought the case here on appeal.

THOS. E. TURNEY and STRONG & MOSMAN, for the appellant.

I.  There was an averment of the infancy of the plaintiff and of appointment of a next friend, *but no proof of it*. These facts were denied by the answer, a general denial. The object of a denial in an answer is to put the plaintiff to proof of the material allegations of his petition; and this is accomplished as effectually by a general as by a specific denial. *Sherman v. R. R.*, 72 Mo. 63; *Porter v. Han. & St. Jo. R. R.*, 60 Mo. 160; *Rogers v. Marsh*, 73 Mo. 64.

II.  Neither section *3516* nor *3519* (Revised Statutes, Missouri, 1879), has any bearing upon the question at issue here. There is no incapacity in the plaintiff to sue in the manner in which this suit was instituted. There was no defect of parties. The plaintiff failed to *prove* infancy and appointment of next friend (as *averred* by him), and the court's attention was called to the fact by an instruction, which made it necessary for the court to pass upon the sufficiency of plaintiff's evidence to entitle him to recover.

III.  The statute (section 3521) allows either a general or a specific denial, and it is not for the courts to pass upon the necessity or expediency of a law.

IV.  The court erred in admitting evidence of plaintiff as to the conductor's second assault. It was not an issue tendered in the petition, and was irrelevant and prejudicial to defendant in aggravating damages. *Eddy v. Baldwin*, 32 Mo. 374; *Greene v. Gallagher*, 35 Mo. 226; *Perkins v. R. R. Co.*, 55 Mo. 214.

V.  The court erred in giving plaintiff's instructions. The *first* instruction directs the jury that plaintiff must recover, if the conductor maltreated him in the controversy growing out of a charge made by the conductor, with or without cause, and defendant must answer in

exemplary damages; the instruction did not state the cause of action pleaded. The *second* instruction was erroneously given as to the measure of damages recoverable. There was no ratification of the wrongful acts of the conductor and defendant is not liable for exemplary damages (*Perkins v. R. R.*, 55 Mo. 214), and the proof was that the conductor was immediately discharged. The *third* instruction ignores any saving in mitigation of damages, as respects plaintiff's conduct. This was unjust to defendant, who acted fairly in all things and offered to compensate him.

VI. The instructions for plaintiff and defendant are inconsistent. This was error for which courts reverse judgments invariably. *Buel v. Transfer Co.*, 45 Mo. 562 ; *Otto v. Bent*, 48 Mo. 23. Misleading instructions should not be given. *Belt v. Goode*, 31 Mo. 128.

VII. The motion for new trial should have been sustained, because the damages are outrageously excessive and the admission of evidence of the second row was error.

VIII. The motion in arrest should have been sustained.

SIMRALL & SANDUSKY, for the respondent.

I. Under the pleadings defendant can not object that there was no proof of the appointment of a next friend. The appointment of a next friend should have been *specifically* denied, otherwise it is deemed as waived. Sect. 3519, Rev. Stat. Mo., 1879 ; *Rogers v. Marsh*, 73 Mo. 64 ; *Sherman v. R. R.*, 72 Mo. 63. The distinction between a mere *objection* which is dilatory in its nature and may be waived, and a *defence* is stated in *Elfauk v. Seiler* (54 Mo. 126), and *Sumner v. Cotter* (71 Mo. 136), the defence of a defect of parties is spoken of as a plea in abatement. The objection can not be raised on instructions to the jury. *Dunn v. R. R.*, 68 Mo. 269 ; *Reugger v. Lintenberger*, 53 Mo. 364. The answer, instructions, motions for new trial, and in arrest are silent upon the point, and the question can not now be raised. *Sweet v. Maupin*, 65 Mo. 70 ; sect. *3557*, Rev. Stat Mo., 1879.

II.    If the minor appeared without the appointment of a next friend, the defect is cured by the statute of jeofails, section *3582*, seventh subdivision Revised Statutes, Missouri, 1879 ; *Grove v. Kansas City*, 75 Mo. 672. If the judgment is *for the infant*, the defendant can not object.    *Holton v. Towner*, Sup. Ct. Mo., not yet reported.

III.    The evidence shows one entire transaction, all relating to the false charge made by the conductor and his misconduct towards the plaintiff.    It was proper for the jury to have the entire transaction, and the *evidence was competent*.

IV.    The court gave no instruction authorizing the jury to find *exemplary* damages, but only *compensatory* damages, for the insult, indignity, and wounded feelings fall under the class last named.    *Smith v. R. R.*, 23 Ohio St. 10 ; *McKinley v. R. R.*, 44 Iowa 314 ; *Crocker v. C. & N. W. R. R.*, 36 Wisconsin 657 ; Hutchinson on Carriers, sect. 610 ; *Fay v. Swan*, 44 Mich. 554 ; *Fairchild v. Stage Co.*, 13 Cal. 599 ; *R. R. Co. v. Flagg*, 43 Ill. 364 ; *Trigg v. R. R.*, 74 Mo. 147.

V.    The instructions asked by defendant, and refused, so far as it was entitled under the law, covered points which are fairly stated and embraced in plaintiff's instructions.

VI.    The damages are not excessive.    The whole conduct of defendant's representative, the conductor, was grossly wrong, outrageous and unwarranted.    The facts were such as required no "impassioned appeal" from counsel, and there is no error materially affecting the merits of the case.    36 Wisconsin 657, *supra ;* 23 Ohio St. 10, *supra ;* 43 Ill. 364, *supra ;* sect. *3775*, Rev. Stat. Mo., 1879.

Opinion by PHILIPS, P. J.

1.    It is first insisted by defendant that the judgment should be reversed because there was no proof offered of the appointment of Adkins as next friend for plaintiff.    The petition alleges the infancy of plaintiff and the appointment of Adkins as such friend.    If this fact had

been properly put in issue by the answer, a failure to make proof of it would have been fatal to the recovery. *Porter v. R. R. Co.*, 60 Mo. 162; *Sherman v. R. R. Co.*, 72 Mo. 63.

The answer, however, only tendered the general issue. This was not sufficient to raise the issue in question. The objection involves merely the capacity of the plaintiff to sue. Such issue at common law could only be presented by plea in abatement under such circumstances. 1 Chitty Plead. (16 Am. Ed. 464). Under the code, if the incapacity to sue appears on the face of the petition, advantage of it may be taken by demurrer. Sect. 3515, Rev. Stat. In such case, the demurrer must be special, not general. Sect. 3516. If the defect does not appear on the face of the petition, it must be raised *specifically* by answer, otherwise it is deemed to be waived. Sect. 3519.

The language of the plea in *Porter v. R. R.*, *supra*, does not appear from the report. But as the answer was framed under the General Statutes of 1865, it must be presumed it was a special denial. In *Sherman v. R. R.*, *supra*, "the appointment of the guardian is *specially* denied in the answer."

But the case of *Rogers v. Marsh* (73 Mo. 64–70), expressly holds that this issue is not raised by general denial. Nor can it be raised after a verdict in favor of the defendant. *Holton v. Towner*, Sup. Ct. Mo., not yet reported.

2. Objection is made to the action of the trial court in admitting proof of the occurrence between plaintiff and the conductor in the car where plaintiff went to call up the friend who saw him come aboard at Harlem. This proof was not outside of the issues tendered by the petition. The allegation of the petition, in this respect, is, that the conductor "in abuse of his authority and trust aforesaid, insultingly accused plaintiff of having entered said train at Kansas City, and charged the plaintiff with attempting to defraud defendant of its fare for conveyance from Kansas City to Harlem, and demanded said fare, and violently abused plaintiff for non-payment thereof,

and assaulted, beat, and maltreated plaintiff, all the while acting within the scope of his authority and trust aforesaid."

This misconduct and maltreatment were not alleged to have occurred in any one particular car, or in any given moment. The conductor had publicly proclaimed the plaintiff before the passengers as an impostor and falsifier, for boarding his train in Kansas City instead of Harlem. He assaulted him by snatching his hat from his head, and when plaintiff talked back to him he violently beat him. His helpless victim all the while assuring him there was a man in the adjoining coach by whom he could establish his integrity. Smarting with his bruised face and wounded pride, he followed the conductor into said car to try to vindicate himself before these strangers. The whole affair was one continuous act, the whole illustrating and characterizing the evil disposition and indefensible conduct of the defendant's agent. The plaintiff, as a passenger, was all the while under the care and was entitled to the protection and considerate treatment of the conductor from Harlem to Liberty.

3. Appellant's chief contention is as to the instructions given by the court.

It may be well enough to premise the discussion of the instructions, by observing that, from the nature of the case, such corporations must act and carry on their business affairs by and through agents. The conductor in charge of this train was, *pro hac vice*, the corporation. By the terms of the contract between plaintiff and defendant, arising on the purchase of the ticket and taking passage on defendant's cars, the plaintiff was entitled to careful transportation, and to kind, considerate, and courteous treatment by the carrier. The company, by selecting and placing this conductor in charge of its train, entrusted him with the performance of its contract with plaintiff. As is aptly stated by Chief Justice Ryan in *Bass v. Ry. Co.* (36 Wis. 463): "We are disposed to hold that the whole power and authority of the corporation, *pro hac vice*, is vested in these officers, and that

as to passengers on board, they are to be considered as the corporation itself; and that the consequent authority and responsibility are not generally to be straitened or impaired by any arrangement between the corporation and the officers; the corporation being responsible for the acts of the officers in the conduct and government of the train, to the passengers traveling by it, as the officers would be for themselves, if they were the owners of the road and train. We consider this rule essential to public convenience and safety, and sanctioned by great weight of authority."

It would, therefore, logically follow, that for the abuse, mistreatment, and injury of and to the passenger by the conductor, the corporation is as much liable as if done by its organized board of directors. *Craker v. Ry. Co.*, 36 Wis. 675, and the authorities there collected.

There is, however, this distinction to be observed, as recognized at least by our supreme court, and other courts, that the corporation is not liable for exemplary damages on account of the wanton and malicious tort of the agent, without proof that the principal either authorized it or sanctioned it after it was committed. *Perkins v. R. R. Co.*, 55 Mo. 214; *Craker v. R. R. Co.*, *supra*, 676.

Counsel for appellant assail the following instructions:

"If the jury find for the plaintiff, they will award him all damage he sustained by the wrongful act of defendant; and in estimating the damages, the jury is not limited to the bodily injury and pain produced by the wrongful assault, but may take into consideration the insult and indignity offered plaintiff, and the wounded feelings arising from the character of the maltreatment and from the publicity of the assault, and all facts and circumstances surrounding the wrongful act, and may give to plaintiff full compensation for the injury, insult, and indignity not exceeding the sum of twenty-five hundred dollars."

This instruction is criticised as if it authorized the jury to award exemplary, or punitive damages. Counsel

are in error in assuming that the direction to the jury that, in estimating the damages they might take into consideration "the insult and indignity offered plaintiff, and the wounded feelings arising from the character of the mal-treatment and the publicity of the assault," is tanta-mount to exemplary damages.

Such damages, under circumstances like these, are compensatory; and are now quite generally conceded to the injured party. The general rule is that "pain of mind, when connected with bodily injury, is the subject of damages; but it must be so connected in order to be included in the estimate, *unless* the injury is accom-panied by circumstances of *malice, insult,* or inhu-manity." *Trigg v. Ry. Co.,* 74 Mo. 153.

This question is well considered in *Smith v. Ry. Co.* (23 Ohio St. 10). The plaintiff sued for a wrongful expulsion from defendant's car. The court, *inter alia,* instructed the jury, that in estimating the damages they could take into consideration "the injury to the feelings caused by a public expulsion from the cars." The court say : "Injuries to the person, whether they consist of mental or physical pain, as well as loss of time and property which naturally and necessarily result from the wrongful and deliberate act of the defendant, are proper subjects for the consideration of the jury in their esti-mate of compensatory damages. That physical pain, caused by an act of trespass on the person, constitutes a legitimate ground for compensatory damages, no one disputes. And why should not mental suffering as well? Is it more endurable than physical suffering? Is it a less probable consequence of a trespass against the person of another? Is the mind an object of less concern in the judgment of the law than the body? Is it any less a part of the person? Is compensation for mental suffering more difficult to estimate than for physical pain? I can find no good reason for affirming any of these distinc-tions. Conceding, therefore, that the evidence would not have justified a verdict for damages beyond the rule of compensation," the court held the instruction correct.

In *McKinley v. R. R. Co.* (44 Iowa 314), the court

sustained a direction to the jury that they might take into the estimation of damages "the bodily pain and suffering, and for the outrage and indignity put upon" the party injured. It was held to be compensatory only.

This question, in even a more parallel case is considered fully by that distinguished jurist, Chief Justice Ryan, in *Craker v. R. R. Co.* (36 Wis., *supra*): A lady passenger on a freight train was rudely kissed several times, against her will, by the conductor. There was no other passenger on the train. In that case, as in this, the company summarily dismissed the conductor, and made ample apology to the offended passenger and offered reparation. On the trial, the court directed the jury: "that the measure of damages would be such compensation as the jury might see fit to award for the injury sustained, including injury to the feelings, the elements of which are, such insult, indignity, contumely, and the like, as she may have suffered;" with the further direction, just as in the case at bar, that they could not "give any thing by way of example or punishment." The court sustained this instruction in the following language: "We need add no authority, that in actions for personal tort, mental suffering, vexation, and anxiety are subjects of compensation in damages. And it is difficult to see how these are to be distinguished from the sense of wrong and insult arising from injustice and intention to vex and degrade. The appearance of malicious intent may indeed add to the sense of wrong; and, equally, whether such intent be really there or not. But that goes to mental suffering, and mental suffering to compensation. But if there be a subtle, metaphysical distinction which we can not see, what human creature can penetrate the mysteries of his own sensations, and parcel out separately his own mental suffering and his sense of wrong, so much for compensatory, and so much for vindictive damages? And if one can not scrutinize the anatomy of his own, how impossible to dissect the mental agonies of another, as a surgeon does corporal muscles. If possible, surely juries are not metaphysicians to do it. And we must

hold, that all mental sufferings directly consequent upon tort, irrespective of all such inscrutable distinctions, is ground for compensatory damages in action for the tort." See, also, Hutchinson on Carriers, sect. 810; Sutherland Dam., vol. 1, p. 734; vol. 3, p. 259–260.

4. And, as if to protect the defendant against any possible misconception of the jury as to the reach of said instruction, the court in the case at bar gave the following further instructions:

"Unless the jury find from the evidence that the defendant authorized or directed the assault before it was made, or ratified the same afterwards, the plaintiff can only recover such sum as will amount to the compensation for the actual injuries he sustained.

"In assessing the damages the jury can only find such sum as will compensate the plaintiff for whatever injury, insult, and indignity was inflicted by the conductor of the train upon the plaintiff, and the jury can not find vindictive damages or smart money, the damages must be compensatory."

There was no inconsistency or contradiction in them. The first was the law, and the others secured defendant against vindictive damages, which a jury, under the influence of such an unprovoked outrage upon a respectaable young man, might be disposed to award.

5. Criticism is, also, made on the instructions given in behalf of plaintiff, because they do not require the jury to find the existence of malice or wantonness as charged in the petition. There is no controversy, or, at least, there is no ground for any, that the whole conduct of this conductor was wanton and brutal. It is without one single mitigating circumstance. I can not conceive why the defendant should complain that the court did not call more directly the attention of the jury to the question of malice and wantonness, so as to stimulate their indignation. We do not think the damages are so excessive as to indicate undue passion or prejudice in the mind of the jury. In the Craker case, *supra*, the court sustained a verdict for $1,000.

The action of the company in dismissing the offend-

ing conductor, and apologizing to the plaintiff and expressing a willingness to make compensation, was most creditable to the defendant. But the only legal effect of this action was to prevent the plaintiff from recovering exemplary or vindictive damages. Smarting, as any young man of proper spirit would, under a sense of this great wrong, that the plaintiff should appeal to the courts for full vindication is not unreasonable.

The publication of such trials, with a just result, is a great protection to the public, and is really for the interest and benefit of the corporations as a check on over-zealous ruffians who unavoidably often impose themselves upon the service of the company.

The judgment of the circuit court is affirmed. All concur.