JOHN R. ROUSE, Respondent, v. THE METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas Court of Appeals, October Term, 1889.

*Rehearing denied, May 12, 1890.*

**Exemplary Damages:** PASSENGER CARRIERS NOT LIABLE FOR. A carrier of passengers using due care in selecting its servants is liable for compensatory damages only, and not for exemplary damages, where its conductor wrongfully ejects a passenger from its cars, unless such wrongful act is authorized or ratified by the carrier, per ELLISON, J.; SMITH, P. J., concurring in a separate opinion ; GILL, J., dissenting in a separate opinion ; rehearing denied per ELLISON, J.

*Appeal from the Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

REVERSED AND REMANDED.

*Pratt, McCrary* and *Ferry & Hagerman,* for appellant.

(1) The true rule of the appellate courts is : Wherever error intervenes a presumption of prejudice arises, and, unless the record shows, beyond a doubt, that no prejudice resulted, there must be a reversal. *Clark v. Fairley,* 30 Mo. App. 335 ; *Deery v. Cray,* 5 Wall. 807 ; *Smiths v. Shoemaker,* 17 Wall. 630, 639 ; *Railroad v. O'Brien,* 119 U. S. 99, 103 ; *Gilmer v. Higley,* 110 U. S. 47, 50 ; *Potter v. Railroad,* 46 Iowa, 399 ; *Stafford v. Oskaloosa,* 57 Ia. 748, 750 ; *Reynolds v. City of Keokuk,* 34 N. W. Rep. 167; *Gillett v. Corum,* 5 Kan. 608, 614 ; *Hall v. Jenness,* 6 Kan. 356, 364. (2) If, upon a trial, an erroneous instruction is given as to exemplary damages, there must be a reversal. This, for the very satisfactory reason that there is no means of knowing whether the jury was affected thereby. *Prueitt v. Quarry Co.,* 33 Mo. App. 18; *Kennedy v. Railroad,* 36 Mo. 351 ; *Whalen v. Church,* 62 Mo. 326 ; *Morgan v. Durfee,* 69 Mo. 469 ; *Bruce v. Ulery,* 79 Mo. 322 ; *Brown v. C. G., etc., Co.,* 89 Mo. 152 ; *Rose v. Story,* 1 Pa. St. 190 ; *Amer v. Longstreet,* 10 Pa. St. 145; *Railroad v. Taylor,* 104 Pa. St. 306 ; *Traction Co. v. Orbann,* 12 Atl. Rep. ( Pa.) 816 ; *Hirshberg v. Strauss,* 64 Cal. 272 ; *Railroad v. Quigley,* 21 How. 213 ; *Winstead v. Hulme,* 32 Kan. 568. (3) The court erred in giving instruction 2, upon its own motion, because a recovery of exemplary damages was permitted for a malicious act of a servant, regardless of a direction of the act or a ratification thereof by the master ; and as expressing the true rule, instruction 13, asked by defendant, should have been given. *First.* No master, whether corporate or otherwise, can be compelled to respond in exemplary damages for the malicious act of a servant, unless the master has directed the particular act to be done in a malicious

manner, or ratifies it after it is done, or knowingly employs one who has reason to believe will commit such act. The reason being that exemplary damages are only given to punish those in fact guilty as distinguished from those constructively guilty of a wrong. *Randolph v. Railroad*, 18 Mo. App. 609; *Perkins v. Railroad*, 55 Mo. 201; *Graham v. Railroad*, 66 Mo. 536; *Cleyhorn v. Railroad*, 56 N. Y. 47; *Craker v. Railroad*, 36 Wis. 657; *The Amiable Nancy*, 3 Wheat. 546; *Hagan v. Railroad*, 3 R. I. 88; *Wardrobe v. Stage Co.*, 7 Cal. 118; *Mandelsohn v. Lighter Co.*, 40 Cal. 657; *Keene v. Lizardi*, 8 La. Ann. 32; *Boulard v. Calhoun*, 13 La. Ann. 445; *Hill v. Railroad*, 11 La. Ann. 292; *Railroad v. Finney*, 10 Wis. 388; *Ackerson v. Railroad*, 32 N. J. L. 254; "*Post*" *Co. v. McArthur*, 16 Mich. 446; *Railroad v. Miller*, 19 Mich. 205; *Fisher v. Railroad*, 34 Hun. (N. Y.) 43; *Townsend v. Railroad*, 56 N. Y. 295; *Parker v. Railroad*, 13 Hun. 319; *Hays v. Railroad*, 46 Tex. 272; *International Co. v. Tel. Co.*, 5 S. W. Rep. (Tex.) 517; *Sullivan v. Railroad*, 12 Ore. 392; *Turner v. Railroad*, 34 Cal. 594; *Kline v. Railroad*, 37 Cal. 400; *Railroad v. Donahue*, 56 Tex. 162; *Abradle v. Railroad*, L. R. 11 App. 250. *Second.* The case of *Hicks v. Railroad*, 68 Mo. 329, is not an authority against this position, because this question was neither argued nor decided. *Carroll v. Carroll*, —— ——; *State ex rel. v. Brassfield*, 67 Mo. 332; *Welch v. Stewart*, 31 Mo. App. 376. *Third.* If our position be well taken, it was error to refuse defendant's instructions withdrawing the question of exemplary damages, because there was no evidence of authorization and none of ratification. (4) Instruction 3, given by the court upon its own motion, was erroneous in that it permitted a recovery of exemplary damages when there was constructive, as distinguished from actual, malice. *First.* Malice, within the meaning of the rule, authorizing a reward of

exemplary damages, is malice in fact as distinguished from malice in law. *Railroad v. Quigley*, 21 How. 202, 214; *Edelman v. Transfer Co.*, 3 Mo. App. 503; *Inman v. Ball*, 65 Iowa, 543. *Second.* The instruction complained of defines malice in law only. 2 Rapalje's Law Dict. 783, 784. *Third.* In line with this principle, exemplary damages have been refused in many cases where an intentional act was done, for which there was no legal excuse so as to constitute malice in law, but the state of the mind was not such as to constitute malice in fact. *Dibble v. Morris*, 26 Conn. 416; *Dean v. Blackwell*, 18 Ill. 336; *Bridge Ass'n v. Loomis*, 20 Ill. 236; *Ousley v. Hardin*, 23 Ill. 352; *Railroad v. Blocher*, 27 Md. 277; *Bell v. Morrison*, 27 Miss. 68; *Hopkins v. Railroad*, 36 N. H. 9; *Wallace v. Mayor*, 2 Hilt. (N. Y.) 440. The same result has been reached in the following cases: *Selden v. Cushman*, 20 Cal. 56; *Turner v. Railroad*, 34 Cal. 594; *Gould v. Christianson*, 1 Blatch. & H. Adm. 507; *Morford v. Woodworth*, 7 Md. 83; *Railroad v. Ramsey*, 3 Laws. (N. Y.) 178; *McCall v. McDowell*, 1 Abb. (U. S.) 212; *Hamilton v. Railroad*, 53 N. Y. 25; *Scott v. Bryson*, 74 Ill. 421; *Waldron v. Marcier*, 82 Ill. 550; *Fitzgerald v. Railroad*, 50 Ia. 79; *Kiff v. Youmans*, 86 N. Y. 324; *Railroad v. Boyd*, 10 Atl. Rep. (Md.) 315. *Fourth.* Upon the same principle it has been repeatedly held that exemplary damages were not recoverable against the estate of a wrongdoer. *Sheik v. Hobson*, 64 Ia. 146; *Reppy v. Miller*, 11 Iredel, Law, 247; *Wright's Adm'r v. Donnell*, 34 Tex. 291; Sutherland on Damages, 758. (5) *Lillis v. Railroad*, 64 Mo. 464, sustains the principle contended for. (6) Instruction 3, given on the court's own motion, was erroneous, in that it indicated to the jury that they should attempt to fix the exemplary damages at such a sum as would be sufficient to prevent like acts in the future. *First.* Because the language may be sufficient in a legal

treatise is no reason why it should be used in an instruction. *Parkhill v. Brighton*, 61 Ia. 103, 109; *Hendrickson v. Kingsbury*, 21 Ia. 379, 384, 385; *Hurt v. Railroad*, 94 Mo. 255, 263. *Second.* There is direct authority for condemning such an instruction. *Hendrickson v. Kingsbury*, 21 Ia. 379. *Third.* As to the amount of exemplary damages the jury was the sole judge without any suggestions from the court. 2 Thompson on Trials, sec. 2065, and cases; 1 Sutherland on Damages, 742.

*Sherry & Hughes*, for respondent.

(1) When the wrongful act is accompanied by circumstances of malice, wantonness or oppression, exemplary damages may be given. *Newman v. Railroad*, 2 Mo. App. 402; *Kennedy v. Railroad*, 36 Mo. 364; *Green v. Craig*, 47 Mo. 90; *Malick v. Railroad*, 57 Mo. 17; *Hicks v. Railroad*, 68 Mo. 329; Pierce on Railroads, 305; *Buckley v. Knapp*, 48 Mo. 162, and cases cited. (2) Exemplary damages may now be given whether the wilful and malicious act of the agent was authorized or ratified by the principal or not, in contravention of the old rule, requiring such authorization or ratification to render the principal liable. *Evans v. Railroad*, 11 Mo. App. 474; 3 Sutherland on Damages, 271; *Gunter v. Mfg. Co.*, 18 S. C. 270; *State v. Railroad*, 23 N. J. L. 367; Thompson on Carriers of Passengers; *Quinn v. Railroad*, 7 S. E. Rep. 614; *Quigley v. Railroad*, 11 Nev. 350; *Railroad v. Slussen*, 19 Ohio St. 157; *Kellett v. Railroad*, 22 Mo. App. 356.

ELLISON, J.—The plaintiff sued for and recovered damages in the trial court for being wrongfully ejected from defendant's street car. The evidence tended to show that soon after getting onto the car a controversy arose between plaintiff and the conductor as to a transfer ticket. Plaintiff contended it was good for a ride

and the conductor telling him to pay or he would put him off. Plaintiff, though protesting that it was unjust, paid his fare in money. Whereupon the conductor continued the controversy and applied to plaintiff some grossly offensive remarks, and finally, calling the "gripman" to his assistance, forcibly ejected plaintiff from the car, though still retaining his fare. No report of the matter was made to the company either by the plaintiff, the conductor or the gripman, but on learning of the conductor's conduct the defendant discharged him, as well as the gripman, from its service. The court gave, over defendant's objection, the following instruction, permitting plaintiff to recover punitory or exemplary damages, in addition to damages compensatory :

"2. And, if the jury shall find for the plaintiff, they will allow him as his actual damages such sum as will fairly compensate him for his physical injuries, if any, and for his humiliation, if any was suffered, in being ejected from defendant's car ; and, if the agents of defendant, with malice toward plaintiff, and in the manner and under the circumstances set forth in the preceding instruction, ejected plaintiff from said car, then in addition to the actual damages above authorized, if any such were sustained, the jury may allow plaintiff, by way of punishing defendant and making an example of it for others in like cases, such further sum as the jury believe will be effective in that behalf. The whole amount of the verdict of the jury, however, cannot exceed five thousand dollars."

This action of the court is the chief matter we are asked to review. It is apparent from the testimony that the defendant did not directly, or by any circumstance, ratify the action of its servants. Nor does it appear that they had any knowledge of any such misbehavior of these servants at any other time.

The terms exemplary, vindictive and punitory damages are used interchangeably, but by whichever name we call them they are allowed as smart money, as a

punishment over and above compensation. The question then immediately arises, for what is the defendant to be punished in this case? What has it done? All that can be brought against it is, that it employed the man who did the injury. But that was a lawful and proper thing to do if it did not know (and which is not pretended) of his liability to commit such a wrong. It has not rendered itself accessory after the fact, for upon learning of the affair it discharged the wrongdoer, thereby refusing to adopt or ratify his act. To uphold the instruction, then, we would be compelled to say that one may be punished for a wrong he did not commit; for a wrong he did not wish to be committed, and which he denounced when he learned of its commission. This would be contrary to law and fundamental right. In determining what sum should be allowed as exemplary damages, the turpitude of the defendant's conduct alone is to be considered, not to appreciate the injury or distress of the sufferer, in the particular instance, but contemplating, in behalf of the public, the act as exemplifying the wrongdoer's *vicious mind*. 1 Sutherland, Damages, 723. It is a question of action, or at least acquiescence, on the part of him sought to be held responsible. Punishment should never be inflicted upon one, *as a* punishment, who has committed a wrong by implication only. Such damages are everywhere said to have for one of their principal objects an example and warning to others that they may not commit the same wrong; and such is the instruction complained of, but of what profit is the example of warning, if a party may be punished who does not do the wrong and could not prevent it? The example should be made of those who do the wrong. So they are allowed for the purpose of deterring a repetition of the wrong by the same person; but how can one be deterred from doing that which he cannot by any human foresight prevent? The theory upon which such damages are allowed is that the party sought to be punished has voluntarily committed a

wrong which he might have abstained from committing. That he has done that which by an exercise of his will he could have avoided. The only possible answer to these suggestions is that the act of the servant is the act of the master. But the act of the servant is the act of the master only in theory or by implication of law which makes the master liable to render full compensation for such act; and when we go beyond this and ask to inflict punishment, we enter the domain of personal responsibility which must be founded on the act of the wrong-doer *in fact*, and the punishment inflicted on the perpetrator alone.

Plaintiff has, of course, a right to compensatory damages, for however innocent and blameless defendant may in fact be, it must nevertheless stand for the act of the conductor in so far as to compensate plaintiff for all legal injury received. In this respect the conductor is, *pro hac vice*, the corporation. And when we consider the extent to which the courts may go, under our adjudications, by way of compensating the injured party, it will be seen that we are not fixing the limits any too narrow in the views to which we have given expression.

It is, however, contended that controlling decisions of the supreme court uphold the instruction of the trial court. It is undoubtedly the rule that in actions of tort, where the wrong complained of has been wilfully, maliciously or wantonly committed, exemplary damages may be allowed. This rule has been frequently stated. But the rule has its exceptions or qualifications. One of these is that the master will not be held liable for exemplary damages for the wrong of his servant if he neither authorized it before commission, or ratified it after commission. Slight acts of ratification it is true will be held to be sufficient, but there must be either prior authorization or subsequent ratification. Some confusion has unnecessarily resulted from the fact that the courts have, in cases where the facts upon which

the exception is based did not appear, merely stated the rule without the exception. But in no case which I have been able to discover in the decisions of this state has the exception been rejected where it appeared among the facts disclosed in the evidence. The exception to the rule is stated and recognized in *Perkins v. Railroad*, 55 Mo. 201 ; *Graham v. Railroad*, 66 Mo. 536, and *Randolph v. Railroad*, 18 Mo. App. 609. But it is insisted that whatever recognition was given to the exception, as stated in these cases, was practically disavowed in the case of *Hicks v. Railroad*, 68 Mo. 329. In that case the rule is stated and no mention made of the exception, and no point seems to have been urged in that regard by counsel. We have no means of knowing what the evidence was, but in view of the fact that the experienced counsel appear not to have brought the exception to the rule to the attention of the court, and when we consider that the judge delivering the opinion in that case is the same who wrote the opinion in *Graham v. Railroad*, *supra*, where he expressly recognized the exception, we are led to the conclusion that the evidence was such. as to exclude the exception. Certainly the court did not intend to disavow law it had but recently before announced, without even referring to the cases. And certainly, if the evidence had justified it, the experienced counsel in that case would not have refrained from calling to his aid an exception to a rule of law which he must have known had before been recognized.

It is not to be denied that the authorities in the country generally are not uniform, but it arises from the fact, as I conceive, that all those who have held that the master, in addition to making compensation, may be punished for the act of his servant, which he did not authorize or ratify, have failed to note the reason upon which, and for which, such damages are allowed. The reason and the only reason why such damages are allowed, as before intimated, is that their infliction will deter the

defendant from repeating the same act, and will be an example and warning to others not to commit the same wrong. Indeed, the object and end of all punishment is not an atonement or expiation for the wrong or crime committed, but it is a precaution against future offenses of the same kind. All human punishment says 2 Blackstone (3 book, 252) should tend to the amendment of the offender himself, or to deprive him of the power to do future mischief, or to deter others by his example. Now when one is confronted with this only foundation supporting the rule for such damages, he can come to but one conclusion as to whom the rule applies. There is hardly any need of argument or illustration. The matter is self-evident.

So strongly logical is this position that it cannot be combated without betraying an admission of its truth. Thus in *Goddard v. Railroad*, 57 Maine, 202, the judge writing the opinion says, by way of enforcing his argument, that the corporation " *can* secure conductors and brakemen who will not assault and insult passengers. When it is thoroughly understood that it is not profitable to employ careless and indifferent agents or reckless and inslvent servants, better men will take their places, and not before. * * * It will be an impressive lesson to these defendants, and to the managers of other lines of public travel, of the risk they incur when they retain in their service servants known to be reckless, illmannered and unfit for their places." That is, of course, the corporation must be an agent in the matter in failing to do that which by prudence and care it could have done. I take it to be a matter of course, that if the master is not careful and prudent in the selection of his servants, he has committed a wrong upon which a foundation may be laid for punishing him. But if the master has exhausted every reasonable endeavor to secure good servants, and is deceived in a way of which no business foresight could have given warning and discharges such servant as soon as he learns of his wrong, is the master

nevertheless to be punished for the wrong? This is not all ; suppose the master, by prudence and care, does in fact select a good servant, one without a single bad trait of temper, disposition or character ; one who has a wide reputation for these characteristics, and yet, of a sudden, by one of those changes or freaks in the human makeup he commits a gross wrong, and the master disowns the act and discharges him : is such master to be held liable to the injured party not only for his loss of property, his pain of body and mind, his indignity and humiliation by way of compensatory damages, but *in addition* to this a further sum is to be added to punish him for what he did not do? The matter can, perhaps, be brought closer to the perception if we leave out of view the corporation and consider the question as it will apply to the great variety of individuals who prosecute various business interests through the aid of servants. In such case the injustice of inflicting punishment for a wrong one does not commit, authorize or ratify can be more easily appreciated.

In support of the position which we have taken, I cite from among the array of authorities collected by counsel, the following : *Craker v. Railroad*, 36 Wis. 657 ; *The Amiable Nancy*, 3 Wheat. 546 ; *Cleyhorn v. Railroad*, 56 N. Y. 44; *Sullivan v. Railroad*, 12 Ore. 392 ; *Hagan v. Railroad*, 3 R. I. 88. For the error in giving the instruction complained of the judgment will be reversed and the cause remanded. SMITH, P. J., concurs in a separate opinion ; GILL, J., dissents.

SMITH, P. J. ( *concurring* ).—I confess that the rule in relation to punitory damages, as applied to corporations, is not well settled in this state. The cases have left room for doubt on the subject. The rulings of the supreme court, as may be seen by reference to the cases cited in the opinions in this case, instead of settling, seem to unsettle, the rule. It is contended that the adjudged cases support either view of the law. The rule either does or does not obtain in this state. Its

existence has been rendered uncertain by the course of judicial decision in this state. *Res est misera ubi jus est vagum et incertum.*

I do not, myself, however, regard the question of the existence of the rule, with its qualification, an open one in this state. If the question were *res integra*, I should hesitate long before lending it my sanction. I do not think the qualification a logical corollary to the proposition. Besides, I am inclined to think that the application of the qualification is not countenanced by a sound public policy. But the cases of *Perkins v. Railroad*, 55 Mo. 201 ; *Graham v. Railroad*, 66 Mo. 536, and *Randolph v. Railroad*, 18 Mo. 609, I think, are conclusive upon us.

Whatever may be the diversity of opinion which has arisen in consequence of other decisions of the supreme court, where no mention is made of the qualification, I think, in the absence of an express ruling, overthrowing the *Perkins* and *Graham cases*, just cited, that we must follow them, whether they have the approval of our judgment or not. With these convictions, I feel constrained to concur with Judge ELLISON in the result which he has reached in his opinion.

GILL, J. (*dissenting*).—With my understanding of the law as it is, and as it should be, I cannot concur in the foregoing opinion. In the language of Judge THOMPSON, in his work on carriers and passengers, it seems to me, even in the face of authorities to the contrary, that "the rule which is in accord with reason and the weight of authority, is that passenger carriers, although corporations, may be liable, in a proper case, in exemplary damages, for injuries caused by their agents, without a direct authorization, or subsequent ratification, of the act complained of." Thompson on Carriers of Passengers, p. 575. This view is sustained by other eminent judges and text-writers. One of the latter, in stating the law, uses

the language, "as the corporation can only act through natural persons, its officers and servants, and, as it of necessity commits its trains or vehicles absolutely to the charge of persons of its own appointment, passengers of necessity commit to them their safety and comfort *in transitu;* the whole power of the corporation, *pro hac vice,* is vested in such officers and servants, and, as to such passengers, *they are the corporation.*" This being the rule, it follows that, by a preponderance of authority (in the same writer's opinion), no prior express authority to commit the oppressive act, nor any subsequent ratification thereof, is required to impose exemplary or punitive damages on the corporation. 3 Sutherland on Damages, p. 271, and authorities there cited. Also, 1 Redfield on Railways, sec. 130, and notes, and note, sec. 187; 2 Redfield on Railways, in criticism of *Hagan v. Railroad,* 3 R. I. 88, etc.

By the opinion of the majority herein, it is admitted that the passenger-carrier corporation is liable for such damages wrongfully committed by the conductor while managing and operating the trains as are denominated "compensatory damages," but that the corporation is not responsible for exemplary damages, except it appear that it had notice of the cruel and oppressive acts of the conductor, and ratified the same, or had previously directed such malicious conduct. This is noted in the opinion as an exception to, or qualification of, the general rule, and reliance is placed on decisions reported in 55 Mo. 201; 66 Mo. 536, and 18 Mo. App. 609. This contention grows out of a remark made by Judge VORIES in *Perkins v. Railroad,* 55 Mo. 214, where the learned judge, after admitting the right of the injured and insulted plaintiff to recover exemplary damages from the corporation, for the wilful and malicious wrongs of the conductor, voluntarily stated (on a point not in issue in that case) "that a principal cannot, in general, be compelled to pay exemplary damages for the fault of his agent, if it be neither

ratified nor authorized by the principal." The case decided was that of an alleged wrongful and malicious expulsion from a passenger car; and it was in answer to the position of the appellant in that case, to the effect that the railroad company was not liable for injuries wilfully and maliciously committed by the conductor, nor for exemplary damages, that Judge VORIES used the. above language. Exemption was not claimed by the corporation on account of there being a discharge of the offending conductor, after notice of his treatment of the plaintiff, nor was the point made that the corporation would have been released of the exemplary damages if the company, on notice of the conductor's malicious acts, had dismissed him from its service. No such issue was made by the pleadings in the circuit court, nor was such an issue presented in the appellate court. But the supreme court affirmed the judgment below (which was for the plaintiff), and expressly approved an instruction given by the court, to the effect that, if, in removing the plaintiff from the car, the conductor did the act in a malicious, cruel and inhuman manner, the defendant railroad company was responsible in exemplary damages, without coupling such general proposition of liability with any qualification whatever. Now, as to what effect we should give this expression of Judge VORIES in the case, *supra,* defendant's able and industrious counsel have furnished us the words of a great jurist in disposing of the comments of the opinion-writer, when going further than the case in hand demanded. Mr. Chief Justice MARSHALL said: "It is a maxim not to be disregarded that general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be *respected, but ought not to control the judgment in a subsequent suit, when the very point is presented.* The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its

full extent; other principles, which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated. What is here said of the *Perkins case*, *supra*, applies with still more force to the *Graham case*, 66 Mo. 536, and the *Randolph case*, 18 Mo. App. 609. In neither was the question which we have in review in the case at bar fairly at issue before the court, and, hence, was not considered nor decided.

While then the cases before cited do not in my opinion furnish controlling matter for our decision here, the supreme court of Missouri has in other cases given us strong argument for the application of the general rule before contended for, to-wit: That where the officers or agents of a corporation act wantonly or maliciously, the corporation may be held to answer in exemplary damages, and that, too, without proof of prior express authorization or subsequent ratification. *Hicks v. Railroad*, 68 Mo. 329; *Travers v. Railroad*, 63 Mo. 421; *Doss v. Railroad*, 59 Mo. 27; *Eckart v. Transfer Co.*, 2 Mo. App. 46; *Maleck v. Railroad*, 57 Mo. 17. It will be found, in an examination of these decisions, that they uniformly recognize the liability of the corporation for exemplary damages where the injury is committed by the officer or agent in the line of his employment and is attended by circumstances of oppression, insults or malice; and that in adhering to this doctrine, announcing and reannouncing the same, there is no qualification attached (as is contended for by defendant) that the corporation is not liable for such punitive damages unless it had previously authorized the malicious acts, or had subsequently, on notice, approved the same. I do not claim these cases furnish precedents controlling the case now under review. The exact point here made was not presented there; at least, it does not so appear from the published opinions. They are, however, potent, as argument, in support of

this plaintiff's right to have the judgment herein affirmed. As I view the decisions this exact question is *res nova* in this state; and from the consideration of decided cases elsewhere I am of the opinion that reason and authority are in support of the ruling of the circuit judge who tried this case.

In *Goddard v. Railroad*, 57 Me. 202, *et seq.*, is found a very vigorous and exhaustive review of this question; and since our supreme court has, on *two* occasions, at least, cited the same with apparent approval (55 Mo., pp. 213–214 and 57 Mo., p. 22) I beg to quote from the court's opinion, and adopt its reasoning, so applicable to the facts of this case: "The law requires the common carrier of passengers to exercise the highest degree of care that human judgment and foresight are capable of to make his passengers' journey safe. Whoever engages in the business impliedly promises that his passenger shall have this degree of care. * * * If the passenger does not have such care, but on the contrary is unlawfully assaulted and insulted by one of the very persons to whom his conveyance is intrusted, the carrier's promise is broken, and his legal duty is left unperformed, and he is necessarily responsible to the passenger for the damage he thereby sustains." This was said in reference to the general doctrine of liability for damages occasioned by the acts of the agent or employe of a carrier. Further on, in relation to the question of punitive or exemplary damages, the same court uses the following language: "But it is said that if the doctrine of exemplary damages must be regarded as established in suits against *natural persons* for their own wilful and malicious torts, it ought not to apply to *corporations* for the torts of their servants on a train (such as a brakeman in that case) when the tortious act was not directly nor impliedly authorized nor ratified by the corporation." * * * "We confess," says the court, "that it seems to us that there is no class of cases where the doctrine

of exemplary damages can be more beneficially applied than to railroad corporations in their capacity of common carriers of passengers ; and it might as well not be applied to them at all as to limit its application to cases where the servant is directly or impliedly commanded to maltreat and insult a passenger, or to cases where such an act is directly or impliedly ratified, *for no such cases will ever occur*. A corporation is an imaginary being. It has no mind but the mind of its servants. It has no voice but the voice of servants ; and it has no hands with which to act but the hands of its servants. All its schemes of mischief, as well as its schemes of public enterprise, are conceived by human minds and executed by human hands, and these minds and hands are its servants' minds and hands. All attempt, therefore, to distinguish between the guilt of the servant and the guilt of the corporation ; or the malice of the servant and the malice of the corporation ; or the punishment of the servant and the punishment of the corporation, 'is entirely fruitless,' and only tends to confuse the mind and confound the judgment. Neither guilt, malice nor suffering is predicable of this ideal existence, called a corporation, and yet under cover of its name and authority there is in fact as much wickedness, and as much deserving of punishment, as can be found any where else. And since these ideal existences can neither be hung, imprisoned, whipped or put in the stocks, since in fact no corrective influence can be brought to bear upon them except that of pecuniary loss, it does seem to us that the doctrine of exemplary damages is more beneficial in its application to them, than in its application to natural persons." * * * "Careful engineers *can* be selected who will not run their trains into open draws ; and careful baggage men *can* be secured, who will not handle and smash trunks and boxes as is now the universal custom, and *conductors* and brakemen *can* be had who will not assault and

insult passengers; and if the courts will only let the verdicts of upright and intelligent juries alone, and let the doctrine of exemplary damages have its legitimate influence, we predict these great and growing evils will be very much lessened, if not entirely cured. There is but one vulnerable point about these ideal existences, called corporations, and that is the pocket of the moneyed power that is concealed behind them. * * * When it is thoroughly understood that it is not profitable to employ careless and indifferent agents, or reckless and insolent servants, better men will take their places, and not before. It is our judgment, therefore, that actions against corporations, for the wilful and malicious acts of their agents and servants, in executing the business of the corporation, should not form exceptions to the general rule allowing exemplary damages. On the contrary we think this is the very class of cases of all others where it will do the most good, and where it is most needed." The Maine court supplements the foregoing with a liberal reference to other decided cases, supporting its views, found noted in 57 Me. 225, *et seq.*

The judgment of the trial court should, in my opinion, be affirmed.

### ON REHEARING.

ELLISON, J.—After further consideration we adhere to the original opinion. We believe it to be in line with the supreme court of this state. It is in accord with the great weight of authority elsewhere, and is the *only* result to be deduced from the reason upon which such damages are allowed. The suggestion that the conductor *is* the master will apply just as readily to the teamster or other servant of an individual, and we cannot make out a rule for one that will not apply to the other. It would be out of all reason to permit one rule for a corporation and another for an individual,

concerning the same act or offense. There must be undue want of care in the selection of the servant or previous authorization, or subsequent ratification. And this appears as the *real* ground, after all, upon which the case of *Goddard v. Railroad,* 57 Maine, 202, which is relied upon by plaintiff, and is always cited in favor of exemplary damages. The court there said: "A careful examination of the case fails to satisfy us that the jury acted dishonestly, or that they made any mistake in their application of the doctrine of exemplary damages. We have no doubt that the highly punitive character of their verdict is owing to the fact that, after Jackson's misconduct was known to the defendants, they still retained him in their service. The jury undoubtedly felt that it was due to the plaintiff, and due to every other traveler upon that road, to have him instantly discharged, and that to retain him in his place, and thus shield and protect him against the protestation of the plaintiff, made to the servant himself at the time of the assault, that he would lose his place, was a practical ratification and approval of the servant's conduct, and would be so understood by him and by every other servant on the road."

The original opinion, we find to be sustained by the following text-writers: Wood's Field on the Law of Corp., secs. 316, 318; Field on Dam., sec. 86; Hutchinson on Carriers, sec. 813; 2 Rorer on Railroads, 870; 2 Morawetz on Corp., sec. 728; Patterson on Railway Accident Laws, sec. 392, pp. 471, 472. In Wood's Field's Law of Corporations, section 316, it is said: "But the weight of authority, in order to hold the corporation liable for exemplary or punitive damages, would seem to require that the corporation either consent to, or authorize, or ratify the tort of the servant; the same as would be required, if the wrong were done by a natural person, in order to visit on him exemplary damages. Why punish the principal, who has not done

the injury or had any such purpose, and is personally free from fault; and especially where there are no circumstances indicating any want of care or any negligence in fact on his part?" And at section 318 it is said: "The difficulty and inconsistency, if not the absurdity, of the application of the doctrine of exemplary damages, especially to corporations, has been frequently referred to and maintained by the most conclusive reasoning. The doctrine is based upon the supposition of wilful wrong or wicked intention. It supposes the purpose to do wrong. And the ground for the infliction of exemplary damages is in the nature of a punishment for that wrong, and also to thereby afford an example to others."

We have not considered how the case would be, if the wanton acts were committed by the general managing agent in general charge or oversight of the principal's business. Upon such state of case we express no opinion either way, and only mention it because of a distinction which seems to be made in some adjudications.

The judgment is reversed and the cause is remanded. SMITH, P. J., concurs; GILL, J., dissents.